LENZ, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*May 22 — September 24, 1901.*

*Railroads: Condemnation of land: Res judicata: Proceeding by land owner: "Assumption" of debt includes promise to pay: Practice: Definiteness in petition and findings.*

1. The decision in a condemnation proceeding instituted by one of several persons similarly situated and injured by the construction of a railroad in a street, is not conclusive, as *res judicata*, in a similar proceeding by another of such persons, but is authoritative under the rule of *stare decisis*.

2. Although sec. 1296*a*, Stats. 1898, giving to an abutting lotowner a right to compensation for injury from the construction of a railroad in the opposite side of the street, gives right of condemnation only to the railroad company, the lotowner may nevertheless institute condemnation proceedings under sec. 1852 where the company delays or omits to do so.

Lenz vs. Chicago & Northwestern R. Co.

3. The "assumption" by the grantee, as part of the consideration for the conveyance of railroad property, of all the existing debts, liabilities, and obligations of the grantor company, includes a promise to discharge each debt or liability to the same person and in the same manner as the grantor was bound to do. Such promise evinces an intent to benefit the creditors, and they may sue directly thereon.

4. It having been for many years the settled law that an agreement, by the grantee in a conveyance, to assume a debt of the grantor confers a right of recovery upon the third party creditor against the grantee, it must be presumed that the parties to such an agreement intended that result.

5. Sec. 1846, Stats. 1898, being framed to regulate condemnation proceedings instituted by a railroad company, is not literally applicable to a proceeding instituted by a property owner under sec. 1852 to secure compensation for land already taken; and in such case the ordinary rule as to liberality in the construction of pleadings should apply.

6. In such a proceeding, however, the petition, findings, and judgment should be so definite as to leave no uncertainty as to the land affected or the rights of the company therein. In this case a certain lack of definiteness and specification, which might have been cured had proper objection been made, is *held* not so great, when the finding is construed in the light of the entire record, as to be prejudicial to the appellant company.

APPEAL from an order of the circuit court for Manitowoc county: GEO. CLEMENTSON, Judge. *Affirmed.*

This was a proceeding instituted by *Jacob Lenz* for condemnation, commenced at the same time, and in all respects similar to, that considered in *Kuhl v. C. & N. W. R. Co.* 101 Wis. 42, the petition being substantially the same, as also the findings of fact and the order of the circuit court appointing commissioners to fix the damages. In this case, however, amended answer was interposed, denying the allegation that the appellant, in 1893, assumed and agreed to pay the liability of its grantor, the Milwaukee, Lake Shore & Western Railway Company (hereafter called Lake Shore) to this petitioner. Certain of the findings are excepted to as not sustained by the evidence, which is brought into the record by bill of exceptions.

The facts as they appear are that in 1890 the Lake Shore, under authority of an ordinance of the city of Manitowoc, accompanied by a due map of location filed with the city clerk, constructed a track along the north half of Quay street in that city, opposite the lots of the petitioner, which were on the south side of the street; that petitioner had taken no steps to prevent such construction or recover compensation therefor. In 1893 the Lake Shore conveyed all of its railroad property to the *Chicago & Northwestern Railway Company* (hereafter called the *Northwestern*) by deed, which recited that the conveyance was in consideration of $100 "and the assumption by the party of the second part [grantee] of all the existing debts, liabilities, and obligations of said party of the first part." Thenceforward the *Northwestern* has owned and operated the track on said Quay street.

This proceeding was instituted May 21, 1897, at the time with some nineteen others, including that of Kuhl above mentioned; the attorneys for the several plaintiffs acting in association with each other. The appellant, after having demurred and answered, made objection upon the trial by moving to dismiss the proceeding on account of the insufficiency of the petition, and also an objection to any evidence in the nature of a demurrer *ore tenus*.

At the close of the trial the court found facts substantially as above stated, and also that by the deed above mentioned the *Northwestern* assumed, and promised and agreed to pay, all the then existing debts, liabilities, and obligations of the Lake Shore; that the location, maintenance, and operation of the railroad materially interfered with the usefulness of the street, and materially injured and damaged the property of the petitioner; and made an order reciting that the railroad company had laid down, maintained, and operated a railroad on the north half of Quay street, in front of and passing the premises of the petitioner, together with other

facts, and determining that a case for condemnation existed, and appointing commissioners,— from which this appeal is brought.

*Edward M. Hyzer,* for the appellant.

For the respondent there were separate briefs by *G. G. Sedgwick* and *O'Connor, Hammel & Schmitz,* and oral argument by *Mr. Sedgwick* and *Mr. A. J. Schmitz.*

The following opinion was filed June 20, 1901:

DODGE, J. The rights of parties similarly situated with those now before us were considered by this court in *Kuhl v. C. & N. W. R. Co.* 101 Wis. 42, which case, the respondent contends, is conclusive, as *res adjudicata,* upon the present. That contention, of course, cannot be sustained. The parties are not the same; and, as a decision in that proceeding would not have been conclusive against this petitioner, it cannot be conclusive in his favor. So far, however, as the questions now presented are the same as those considered and disposed of in that case, the decision of the court is authoritative, upon the rule of *stare decisis,* unless we must now determine to overrule it.

The first position argued by appellant is that an abutting lotowner upon the opposite side of the street has no right to institute condemnation proceedings in reliance upon sec. 1852, Stats. 1898, for the reason that sec. 1296*a,* Stats. 1898, giving to the lotowner right to compensation, gives right of condemnation only to the railroad company. This question was squarely presented by the briefs of the opposing parties and was fully decided in favor of the petitioner in the *Kuhl Case,* and we see no reason to hesitate in yielding to that decision full authority now. That objection to the present proceeding must, therefore, be overruled.

It was further decided in the *Kuhl Case* that, if the *Northwestern,* as a consideration for the transfer to it from the Lake Shore, assumed and promised and agreed to pay all

the debts and obligations of said Lake Shore, and all just. claims against it,— as the court found in that case,— then it was liable upon that contract to the petitioner in a proceeding under sec. 1852, Stats. 1898, and that the statute of limitations upon such right of recovery commenced to run only upon the making of the deed containing such assumption of liabilities. Appellant now assails the holding that. original liability could thus be created against the *Northwestern*. It also contends that the evidence which is now before us does not support the finding. The first of these contentions — that which assails the proposition of law decided in the *Kuhl Case* — we have no hesitation in overruling. We are entirely satisfied with the conclusion reached. in that case. The second contention, however, was not ruled upon in that case, and must be considered. The deed merely recites, as one of its considerations, assumption by the *Northwestern* of all the existing debts, liabilities, and obligations of the Lake Shore. There is no other evidence of any agreement or assumption. Does that support the finding? Appellant contends not, for several reasons: first, that the word "assumption" is not equivalent to an agreement to pay such liabilities; secondly, that, if it is, there is nothing to support an inference of intention in the parties that the agreement was for the benefit of the petitioner, so as to give him direct right of action thereon.

The contention that an agreement to assume a debt or liability is not an agreement to pay it is supported by no argument beyond the fact that in nearly all the cases which have come before this court the phrase used has been "assumes and agrees to pay." The extent, therefore, to which such argument goes is to establish that we have not, in those cases, been called on to decide the effect of "assumption" alone. Other courts, however, have not been so exempt. Industry of respondent's counsel has discovered numerous instances of the use of the word "assume," in all of which

it has been construed to include the duty of payment, if the
assumption be of a debt, and of payment to the creditor.
*Braman v. Dowse*, 12 Cush. 227; *Locke v. Homer*, 131 Mass.
93; *Schley v. Fryer*, 100 N. Y. 71; *Stout v. Folger*, 34 Iowa,
71; *Sparkman v. Gove*, 44 N. J. Law, 252; *Mills v. Dow's
Adm'r*, 133 U. S. 423? No decision has been cited in con-
tradiction of these holdings. They seem to us entirely cor-
rect in principle and reason upon the subject now under
consideration. "To assume" is defined by the lexicographers
as "to take upon one's self," "to undertake," "to adopt."
Obviously, to take upon one's self or to adopt the obligation
or the liability of another is to put one's self in the place of
that other as to such obligation or liability, to become bound
as such other was bound. An assumption is broader than a
promise to pay, as "liability" or "obligation" is broader
than "money debt" in significance; but the broader term
naturally and necessarily includes the narrower, in the ab-
sence of exception. As the liabilities and obligations of the
Lake Shore, though covering other things, clearly included
its duty to pay debts, so the assumption by the *Northwestern*
bound it to pay the debts, as well as to perform the other
obligations of the former company. The reason for the use
of the word "assumption" alone in this connection in the
deed is rendered obvious in the light of the situation. No
other would have been broad enough. The Lake Shore was
a railway company in full operation. Its undertakings were,
of course, various. Freighting contracts, rent and hire of
switch, track, and dockage privileges, outstanding mileage
tickets, maintenance of a steamboat line, are but a few of
the liabilities and obligations under which it rested, and as
to which its grantee undertook to perform all its duties.
The assumption of a debt includes the duty to pay it as fully
as if the latter words were used. We thus reach the con-
clusion that the evidence — namely, the deed — fully sup-
ports the finding that appellant did assume and agree to pay

all the existing debts, liabilities, and obligations of the Lake Shore; not impliedly, as counsel suggest, but by express agreement, evidenced and declared by the deed under which title to the railroad property is held and enjoyed. *Vilas v. Dickinson,* 13 Wis. 488; *Stites v. Thompson,* 98 Wis. 329, 331.

The conclusion thus reached — that the finding is supported by the evidence — brings this case again to identity with the *Kuhl Case* on this immediate subject, for the finding there considered was in the same words. We might well rest our present decision on that authority, but it may be well to consider some of the earnest argument of appellant's counsel against the existence of direct personal liability to petitioner. He urges upon us an intimation in *Electric Appliance Co. v. U. S. Fidelity & G. Co.* 110 Wis. 434, where it was said: "There are cases going to the limit of holding that, to entitle the third person to recover upon a contract made between other parties, there must not only be an intent to secure some benefit to such third person, but the contract must have been entered into directly and primarily for his benefit. . . . We consider the true rule to be that there must not only be an intent to secure some benefit to the third party, but there must be a promise, legally enforceable." The insufficiency in the bond under consideration in that case was that it did not require or promise any payment to the materialmen seeking to enforce it, merely protection to the obligee party; hence, of course, there was no apparent intent to benefit the materialmen. Clearly, if the performance of a contract must necessarily benefit the third person, an intent to accomplish that result must be presumed. Payment direct to the third person is, of course, a benefit to him, and, if that is required by a contract, the intent to so benefit is beyond question. It is not essential that the individual claimant should have been specifically in mind. If he falls within a class to whom payment is agreed to be made, that suffices. An agreement

to pay all creditors is as surely intended for benefit of each as if he were specified by name. *Houghton v. Milburn*, 54 Wis. 554; *Johannes v. Phenix Ins. Co.* 66 Wis. 50, 56. That the agreement before us contemplated payment direct to the creditors cannot be doubted. An agreement to hold the Lake Shore harmless against its liabilities, nay, even an agreement to pay its obligations, might be ambiguous, for it might contemplate only payment to the company in reimbursement. An agreement to assume, however, is subject to no uncertainty. By that the promisor takes upon himself — adopts — the obligation or duty of the other. That duty or obligation is to pay to each creditor the amount of his debt, to discharge each liability to the same person and in the same manner as the Lake Shore was bound to do. These considerations constitute a clear distinction from *Simson v. Brown*, 68 N. Y. 355, cited by appellant, even if that case were recognized as authority. There a penal bond was merely conditioned upon paying a debt owed to a third person by the obligee, and upon holding obligee harmless. The third person was held not entitled to sue because there was no *promise* to pay him, merely a promise to pay a certain sum to the obligee unless the debt were paid to such other. Whether or not we should agree with that construction of the bond is immaterial. Upon that construction the case was decided, recognizing the proposition we now assert,— that a *promise* to pay to a third person does evince an intent to benefit him.

Another consideration is quite conclusive of the intent of both parties to the agreement in question that appellant was to become bound directly to the creditors of the Lake Shore; that is the fact that such construction has been given to assumptive agreements in conveyances at least ever since *Bishop v. Douglass*, 25 Wis. 696, decided in 1870, and followed by many other decisions, among them *McClellan v. Sanford*, 26 Wis. 595; *Bassett v. Hughes*, 43 Wis. 319;

*Palmeter v. Carey*, 63 Wis. 426.   By these cases the law had, before this deed was made, become entirely well settled that such agreements confer right of recovery upon the third party creditor against the promisor, and it must be presumed the parties intended such result.   The rule of the above authorities has since been repeatedly confirmed.   *Enos v. Sanger*, 96 Wis. 150; *Kuener v. Smith*, 108 Wis. 549.

The petition is vigorously assailed for noncompliance with sec. 1846, Stats. 1898.   It is, of course, apparent that that section and the following were framed to regulate proceedings upon an original application by a railroad company for condemnation of land before the same had been taken, and we have heretofore had occasion to suggest that, in the nature of things, they cannot be literally applicable to a proceeding by the owner of property under sec. 1852, after the railroad company has taken and occupied land and he is proceeding, not technically to effectuate condemnation, but to secure compensation for that taking upon the theory of a contract to pay him, implied by the statute from the act of taking.   *Babcock v. C. & N. W. R. Co.* 107 Wis. 280. In such a proceeding we see no reason why the ordinary rule as to liberality in the construction of pleadings should not apply, for the petition becomes, in substantial effect, a complaint in an action on contract.   Nevertheless, there does remain so much characteristic of a proceeding *in rem* as that from the final determination in the proceeding is to result judicial determination of the extent of real-estate rights acquired by the railroad, as well as the amount of compensation which it must pay therefor.   The adjudication becomes a muniment of title, and should, therefore, be so definite as to permit of no ambiguity in the extent either of the real estate affected or of the rights of the company therein.   The petition should be broad enough and definite enough to support such a finding and judgment.   We cannot commend either the petition or the finding in this case

as fully satisfying these requirements. The petition goes no further than to declare the existence of the track in a certain street opposite petitioner's premises. As the track is but about five feet wide and the street presumably sixty feet, this is no very definite location. The ordinance permitting the laying of the track, and referred to by date in the petition, is no more specific. The finding, however, reduces the ambiguity by fifty per cent., for it locates all the railway company's rights upon the north half of the street. One purpose of definiteness, at least in the finding, is to enable the commissioners to intelligently fix the compensation, and that they cannot do unless they know what the railroad company is to have and the claimant to lose. The petition and finding are not entirely satisfactory in that respect, and, if we could see that prejudice therefrom would result to the appellant, we might feel obliged to reverse. It is to be noted, however, that the defects consist merely in lack of definiteness and specification, which might have been cured upon proper objection by the appellant, if prejudicial to him. The petition might have been amended on proper objection, and such defects in the finding avoided upon a request calling the circuit court's attention thereto. Upon careful consideration of the entire record, we construe the court's finding as adjudicating that the appellant and its grantor have taken, and upon making compensation will be entitled to enjoy, the privilege of maintaining a switch track, at such place as they please and the city will permit, on the north half of Quay street. Such right the Lake Shore obviously applied for and received from the city. The ordinance does not limit them to any particular place in the street; indeed, the limitation to the north half now comes for the first time in the finding. In this view of the situation, we reach the conclusion that the finding is sufficiently specific, construed as above stated, to enable commissioners to intelligently fix the compensation which the petitioner should receive for injury or dam-

age to his property from the obstruction of the north half of Quay street opposite the same, and that the appellant is not prejudiced so as to require reversal, in the light of the directions of sec. 2829, prohibiting reversal by reason of any error or defect in pleadings or proceedings which does not affect the substantial rights of the adverse party.

By the Court.— Order appealed from is affirmed.

A motion by the appellant for a rehearing was submitted on the brief of *Edward M. Hyzer,* for the motion, and that of *G. G. Sedgwick, contra.*

The motion was denied September 24, 1901.