STANDARD UNDERGROUND CABLE CO.
v. SOUTHERN INDEPENDENT TEL-
EPHONE CO. et al.†

(Court of Civil Appeals of Texas. Jan. 18, 1911. Rehearing Denied Feb. 15, 1911.)

1. CORPORATIONS (§ 406*)—AUTHORITY OF OF-
FICERS AND AGENTS—PRESIDENT.

The president of a corporation has no power to buy, sell, or contract for the corporation, nor to control its property or funds, in the absence of anything in the act of incorporation or the action of the board of directors conferring such power on him, directly or by implication.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1611–1614; Dec. Dig. § 406.*]

2. CORPORATIONS (§ 398*)—AUTHORITY OF OF-
FICERS AND AGENTS—AUTHORITY OF DIREC-
TORS—STATUTES.

Under article 661, Rev. St. 1895, providing that the directors of a corporation shall have the general management of its affairs, and article 656, by which the directors or trustees of a corporation shall choose one of its number president, corporate powers can only be exercised under the authority of the directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1592–1594; Dec. Dig. § 398.*]

3. PLEADING (§ 422*) — DEFECTS — INSUFFI-
CIENCY OF VERIFICATION—WAIVER.

Where a corporation in its answer to an action for the price of goods pleaded the facts and by an answer of non est factum denied the authority of its president to bind it, without verifying such answer by oath of its proper officer, and there was no objection or exception to the answer on that ground, and evidence to support the answer was given, as well as evidence in rebuttal, the objection to the answer of the want of a verification is waived by the plaintiff, and no advantage thereunder can be taken in the appellate court.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1414–1417; Dec. Dig. § 422.*]

4. EVIDENCE (§ 94*) — BURDEN OF PROOF —
PROOF OF NEGATIVE—DEFECTIVE PLEA OF
NON EST FACTUM.

A defective plea of non est factum, when not objected to, merely shifts the burden of proof of the contract to the defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 116, 117; Dec. Dig. § 94.*]

5. CORPORATIONS (§ 410*) — OFFICERS AND
AGENTS—AUTHORITY — PRESIDENT — BOARD
OF DIRECTORS.

The plaintiff sold goods to an electric company, billing them to itself with drafts against

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

the company, knowing that they were intended for use in the construction of a telephone system, and that the purchaser's contract was only with an individual contractor for the telephone company. The telephone company shortly afterwards reorganized and transferred all its property to a new company, the defendant herein, of which the individual contractor was president and contractor for the construction of its plant. The new company assumed no debts of its predecessor. The goods were never tendered or delivered to the defendant company, but the plaintiff subsequently procured defendant's president to sign a writing containing false recitals as to the claim, and to undertake therein to become liable to plaintiff for the goods. The by-laws of defendant company authorized the president to preside at meetings and to sign checks and contracts, and provided that the board of directors should manage its affairs. There was no action by the board of directors as to any part of the transaction, and they did not ratify the president's undertaking or receive any benefit thereunder. *Held*, that the president was not authorized to execute the undertaking, and that the defendant company was not liable.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1629–1632; Dec. Dig. § 410.*]

6. CORPORATIONS (§ 306*)—OFFICERS—UNAUTHORIZED ACTS—LIABILITY TO THIRD PERSONS.

Want of authority in the president of a corporation to bind the company by the execution of an undertaking to pay for goods sold to a third person will not render the president personally liable on an implied warranty of payment.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1457, 1458; Dec. Dig. § 306.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by the Standard Underground Cable Company against the Southern Independent Telephone Company and against officers of defendant company in their individual capacity. Judgment for defendants, and plaintiff appeals. Affirmed.

F. G. Morris, for appellant. R. V. Bowden, for appellees.

FLY, J. Appellant instituted one suit against the Southern Independent Telephone Company to recover the value of certain construction material for a telephone line, based on an alleged contract executed in the corporate name by A. M. Brett, as president, and Lorion Miller, as secretary, and another against the persons named on the same contract in their individual capacity. The causes were consolidated, and amended petitions were filed, in one count of which it was sought to hold the corporation and in the other the individuals. The cause was submitted to the court without a jury, and judgment was rendered for appellees.

In 1901 the Southern Independent Telephone & Telegraph Company was chartered under the laws of Texas, and was authorized to construct and maintain a telephone and telegraph system in the city of El Paso. In August, 1901, the corporation made a con-

tract with A. M. Brett, and paid the full consideration to her, for the construction of its plant or system. Afterwards A. M. Brett entered into a contract with the Southern Electric & Machinery Company, by which it agreed to construct the plant or system for Brett, which she had contracted to construct for the Telephone and Telegraph Company. The Electric Company, in furtherance of its contract, purchased of appellant certain telephone cables, the value of which is sued for in this cause. The cables were shipped to El Paso early in 1902, being consigned by appellant to itself, and drafts on the Electric Company, with bill of lading attached, were sent to an El Paso bank, which was instructed to notify the Electric Company, and instructions were given not to deliver the cables until the drafts were paid. The cables were not paid for, and were finally stored by appellant in El Paso.

Appellant is a corporation, with its principal office in Pittsburg, Pa., and J. R. Wiley was its western manager, with headquarters in Chicago, Ill., and Johnston and Dean were sales agents, located in St. Louis, Mo., who acted in all the transactions herein involved under the control and direction of Wiley. In October, 1902, the appellee the Southern Independent Telephone Company, a corporation, was organized under the laws of Texas to construct, maintain, and operate a telephone system in the city and county of El Paso, and the Southern Independent Telephone & Telegraph Company transferred all of its rights, franchises, and property to A. M. Brett, and she subsequently transferred them to the Southern Independent Telephone Company, which for brevity will be called the "Telephone Company." She nor the Telephone Company assumed any liability at that time for the debts of the Electric Company, which ordered the cable from appellant. When the transfer was made, the original telephone and telegraph company discontinued business and ceased to exist, but without formal dissolution. On October 28, 1902, the Telephone Company, just organized, entered into a contract with A. M. Brett for the construction of its plant and system similar to the contract made between her and the old telephone company, and paid to her the full consideration in stocks and bonds of the corporation, and A. M. Brett immediately made another contract with the Electric Company for the construction of the plant. Appellant's manager and sales agents were fully apprised of the contracts between the old and new telephone companies and A. M. Brett and her contracts with the Electric Company, and the contracts were exhibited to them and the situation fully explained before the cable was shipped.

After the cable had been shipped, Wiley endeavored to induce A. M. Brett to assume payment for the cable, but she did not as-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

sume ·payment for the same, and on January 17, 1903, while Mrs. Brett was on a visit to Chicago, a letter, which was prepared by F. A. Rinehart, appellant's treasurer, in its office in Pittsburg, was presented by Rogers, Wiley's chief clerk, to Mrs. Brett for her signature. It was fully prepared for signing, and Rogers told her that, if she would sign the letter, "it would greatly appease the people in the home office, and make them feel a little more comfortable. They only wanted it to make good feeling, * * * that it was a letter strictly, and in no way a contract." The letter was signed, and is as follows: "Chicago, Ill., January 17, 1903. Mr. F. A. Rinehart, Treas. Standard Underground Cable Co., Pittsburg, Pa.—Dear Sir: At the request of your Chicago office, we write you in explanation of the facts relating to cable now in storage at El Paso, Texas, which was shipped by you to the Southern Electric & Machinery Company in January and February, 1902. This cable was ordered by the Southern Electric & Machinery Company, through Johnston and Dean, of St. Louis, Mo. The Southern Electric & Machinery Company were contractors doing construction work for the Southern Independent Telephone & Telegraph Company. When the drafts, bills of lading and receipted invoices attached arrived at El Paso they were not paid by the Southern Electric & Machinery Company. Consequently, the drafts, bills of lading and invoices went back to you at Pittsburg. The cables were, however, stored by railroad companies at El Paso, and by subsequent arrangement made with your Chicago agency, it was agreed that the Southern Independent Telephone & Telegraph Company would take the cables (which had been of course purchased for their use) and would pay the amount of your drafts, and dated January 29th, 1902, for $3,985.19, the other dated February 12, 1902, for $2,494.00, with interest thereon from date, and would also pay all the· freight and storage charges which accumulated upon said cables at El Paso; this, of course, being subject to the understanding that when this was done there would be a rebate allowed by your company of ninety-six cents per hundred pounds on account of freight charges. Subsequently, the Southern Independent Telephone & Telegraph Company was reorganized under the name of the Southern Independent Telephone Company, which company is the present owner of the telephone franchise in El Paso, where it is intended that these cables should be used. This new company has stepped into the shoes of the old one and has assumed its undertaking to accept and pay for these cables and the charges thereon as mentioned above. This matter has been the subject of frequent negotiation with your Chicago office and the cables have been held at El Paso pursuant to our request, with the understanding that we would soon get our financial

affairs in such shape as to be able to take· and pay for the cables. We have written this letter because we understood from your Chicago agent that the Standard Underground Cable Company is uneasy about the situation, and we desire you to know that we expect very shortly to get our financial arrangements made so as to be able to discharge our obligations, that we appreciate that the time was given by your company and the cables were allowed to remain at El Paso instead of being shipped away, upon the distinct understanding which has been recognized by this company that it would take and pay for the cables, together with interest on the invoice price and all freight, storage and other charges which may have accrued at El Paso, subject, however, to the deduction for freight hereinbefore referred to, and a reduction in the aggregate amount of the two bills, to $7,-636.69, including reels which will be credited to us at invoice price when returned to factory, charges prepaid. Yours Truly [Signed] Southern Ind. Tel. Co., by A. M. Brett, President. Lorion Miller, Secretary." There had been no previous understanding as to binding the Telephone Company for the cable, nor was there any at the time the letter was signed. At that time the cable was in the possession of appellant in El Paso, Tex., and so remained until it was damaged by fire on January 29, 1905. After the fire, appellant shipped the damaged cable to Pittsburg and used it in its factory, crediting the account with $3,049.85, all that could be realized for it. The cable was at all times in the possession of appellant, and was insured in El Paso by appellant, and it collected from the insurance companies, in full for the damages by fire, the sum of $3,640.94.

Mrs. A. Brett was president of the old telephone and telegraph company and W. V. Smith was its secretary, and, from the date of the organization of the present Telephone Company to a period beyond that in which transactions involved in this suit were had, she was its president, and Lorion Miller was its secretary. The president was authorized by the by-laws "to preside at all meetings of the stockholders and of the directors, and to· attend meetings of any committee when requested by the chairman, to sign all checks and certificates of stock, contracts, and instruments, and to cause the seal of the corporation to be attached thereto when required." No action was ever taken by the board of directors of the Telephone Company relative to the cables or any of the transactions in controversy in this action, and no tender of the cables was ever made to the Telephone Company, nor was any contract ever made by the original Telephone and Telegraph Company with appellant or any one else in connection with the cables, and the present Telephone Company never at any time assumed any obligation in relation thereto with appellant or any one else. The Tele-

phone Company never had any communication with appellant, or its agents, relative to the matters in controversy, unless the letters of Mrs. Brett can be considered its letters. There was never any agreement on the part of the Telephone Company to purchase or pay for the cable, unless the letter herein copied be construed as such agreement. The by-laws of the appellee Telephone Company provided that the board of directors should have the management and control of the affairs of the corporation, and Mrs. Brett was never its general manager, nor had any authority as president, except as conferred by the by-laws. The Electric Company agreed with Mrs. Brett, in her capacity as contractor, to furnish all material to construct the plant, and charge the same to her at the cost thereof plus 5 per cent., and in the purchase of the cable it was arranged by and between the Electric Company and appellant that the cable should be billed to the former at about $1,500 in excess of the market value and in excess of what appellant was to receive, the purpose being to enable the Electric Company to obtain from A. M. Brett such excess, denominated by witnesses a "rake off," and that excess or "rake off" is included in the amount which appellant seeks to recover from the appellees. The latter knew nothing about the "rake off" until after the letter of January 17, 1903, was signed. In the petition on which this cause was tried no credit was allowed for the $3,640.94, received by appellant from the insurance companies. The letter signed by Mrs. Brett and Miller could not have evidenced a settlement of any matters between appellant and the Telephone Company, nor the acknowledgment of an existing debt, because up to that time there had never been any transactions or negotiations of any character whatever between the parties, and there was no existing debt, and the authorities cited by appellant refer to settlements of pending difficulties or transactions between the parties. It would be absurd to discuss matters of settlement between the parties where there were none to be settled. It was proved beyond doubt that there had never been any negotiations between appellant and the old or new Telephone Company as to the purchase of the cables, and the recitals or statements to that effect in the letter were utterly false, and had no foundation whatever in fact, and were concocted by Rinehart, appellant's treasurer, in Pittsburg. The assumption of an imaginary debt of the old telephone company could not bind any one, for the simple reason that it was imaginary, and had no existence and could not be assumed. The recitals that the Electric Company was doing construction work for the old company was untrue, and appellant knew it at the time the letter was signed, and it knew that it had never been agreed that the old company would take the cables and pay the drafts of appellant and freight and storage charges, and that no negotiations had ever taken place between appellant and the appellee Telephone Company about cables or otherwise, and knew that it had never assumed the debt or in any manner recognized it as binding the corporation. There is in the letter no assumption of the debt, and the narration of a number of falsehoods could not have the effect of rendering the Telephone Company or any one else liable for the debt of another with which it was in no privity whatever. The Telephone Company had not at that time received any consideration for the assumption of the debts of the Electric Company, and its assumption of a debt founded upon the recital of a tissue of falsehoods did not bind it to pay the debt.

In the case of Howard v. Windom, 86 Tex. 560, 26 S. W. 483, cited by appellant, the letter construed by the court had reference to a promissory note executed by the writer of the letter, and the only question was whether the writer had stayed the running of the statute of limitation by his language, and renewed his debt. It has no applicability to the facts of this case. In the case of Lumber Co. v. Dickey, 27 S. W. 955, decided by this court, and cited by appellant, the parties had a settlement of open accounts between them, and Dickey acknowledged that on a settlement he was indebted to the lumber company, and there was no claim that there had been any mistake or fraud, and, of course, Dickey was held liable on his acknowledgment of his indebtedness, and that he could not go back of it. That decision gives no aid nor comfort to appellant in this case. In the case of Lenz v. Railway Company, 111 Wis. 198, 86 N. W. 607, cited by appellant, the Supreme Court of Wisconsin held that, where one railroad company bought the property of another and assumed its debts, it was liable for such debts, but it did not hold that an assumption of the debts of the railroad which had no existence rendered it liable to pay the debts of still another party. It is apparent from a letter written on April 24, 1903, by appellant's general manager to Mrs. Brett, that appellant did not consider that the property had been sold to the Telephone Company, or that it was bound for the purchase money, for he speaks of returning the cables to Pittsburg, and wanted Mrs. Brett to inform him "frankly what the prospect is for you to take the cables and pay for them immediately."

It clearly appears that the directors of the Telephone Company had never authorized Mrs. Brett to buy any material or assume any debts for them, and the by-laws did not clothe her with any such authority, and the general law as to the authority vested in the president and secretary of a corporation to make purchases, or to assume the indebtedness of another, must be looked to to deter-

mine the power and authority vested in Mrs. Brett. It is the general rule that the president of a corporation has no power to buy, sell, or contract for the corporation, nor to control its property or funds, in the absence of anything in the act of incorporation or the action of the board of directors clothing him with such power. He has without such special authority no more control over the corporate property and funds than has any other director. Titus v. Railroad, 37 N. J. Law, 98; Potts v. Wallace, 146 U. S. 689, 13 Sup. Ct. 196, 36 L. Ed. 1135; Wait v. Nashua Ass'n, 66 N. H. 581, 23 Atl. 77, 14 L. R. A. 356, 49 Am. St. Rep. 630; Brush v. Montgomery, 114 Ala. 433, 21 South. 960; Hamilton v. Bates (Cal.) 35 Pac. 304. In the last case cited, it was held that a corporation cannot be held liable where its president, without corporate action, being shown, assumed the debts of a person, even though the money arising from the transaction came into possession of the corporation. In the case now at bar, no action was taken by the directors or stockholders of the corporation in regard to the cables either before or after the letter was signed by Mrs. Brett, and there is no claim of the ratification of her acts by the corporation. No advantage was gained or profit reaped by the Telephone Company by reason of the execution of the contract. The rules in regard to presidents of corporations organized under the laws of Texas are laid down in Fitzhugh v. Franco Land Company, 81 Tex. 306, 16 S. W. 1078, and in Land Co. v. McCormick, 85 Tex. 416, 23 S. W. 123, 34 Am. St. Rep. 815, and it is held that the president could not bind the corporation without authority from the board of directors, either given directly or by implication. It is not claimed that any such authority was given by the board of directors of the Telephone Company.

It is provided in article 661, Rev. St. 1895, that the directors shall have the general management of the affairs of the corporation, and it is provided in article 656 that such directors or trustees shall choose one of their number president, and shall appoint a secretary and treasurer and such other officers as they may deem necessary for the corporation, and it is clear that corporate powers can only be performed under the authority of the board of directors. Neither the statutes nor the by-laws conferred any power on the president to buy material for the corporation, the only power given him in the by-laws in connection with contracts being the authority to sign them, of course, after they have been authorized by the directors. Mrs. Brett never informed Wiley that she was buying the material for the corporation, but told him she was purchasing the supplies for herself. He knew that she wanted the supplies as a contractor. The following cases are in point: Murray v. Lumber Co., 143

Mass. 250, 9 N. E. 634; Lyndon Mill Co. v. Lyndon Lit. Inst., 63 Vt. 581, 22 Atl. 575, 25 Am. St. Rep. 783; Des Moines Mfg. Co. v. Tilford Milling Co., 9 S. D. 542, 70 N. W. 839. In the cited case of Lyndon Mill Co. v. Lyndon Literary & Biblical Inst., the president and four of the trustees determined to make repairs for the corporation, and the president bought the lumber and it was charged by the milling company to the appellee, and the Supreme Court of Vermont said: "A single trustee or director has no power to act for the institution which creates his office, except in conjunction with others. It is the board of trustees or directors only that can act. If the board of trustees or directors makes a president, trustee, or any other person its officer or agent to act for it, then such officer or agent has the same power to act, with the authority delegated to him, as the board itself. His authority is in such case the authority of the board. It not appearing that Hall was authorized by a majority of the defendant's trustees to purchase the lumber in question upon the credit of the defendant, the case must be disposed of upon the assumption that he had no such express authority."

Appellant knew that Mrs. Brett had a contract with the Telephone Company to furnish all material and construct the plant, knew that the statements in the letter were false, and that Mrs. Brett had no authority, express or implied, to bind the Telephone Company. Appellant knew that, if the trade had been consummated, it was for the benefit of Mrs. Brett, and not for the corporation. That she so informed Wiley is uncontradicted. It would not matter what authority Mrs. Brett had from the corporation. She was not representing the corporation in signing the letter, and appellant knew it. However, Mrs. Brett was not the general manager of the corporation, and had no authority to purchase material for it.

The Telephone Company fully pleaded the facts connected with this transaction, and denied the authority of Mrs. Brett to bind it, and the answer was not excepted to by appellant on the ground that it was not verified by affidavit, although several exceptions were filed. No objections were urged to the testimony tending to support the answer, and it is only after the cause is filed in this court that the position is assumed that the court erred in holding that the contract was not executed by authority of the Telephone Company, "because there was no valid or effectual pleading by defendant of the issue of non est factum, in that its pleading denying the authority under which said contract was executed was not verified by oath of defendant, or its proper officer or agent." None of the decisions cited by appellant supports its contention. Those cases turn on objections to evidence when offered on pleas not verified

by affidavit, but none of them holds that a plaintiff can keep silent as to the plea of non est factum in the trial court, and raise no objection to evidence offered by the defendant, and even offer original evidence to show authority in the president to bind the company and in rebuttal of the plea, and then obtain full benefit of the defects in the plea in the appellate court. The authorities are against the proposition of appellant. In the case of Williams v. Bailes, 9 Tex. 61, it was held: "The defendant could not be permitted to throw upon the plaintiff the burthen of proving the execution of the instrument or the cause of action, although under such defective plea, if not objected to in time, he might adduce evidence to support his own defense." That decision is cited with approval in Insurance Co. v. Wicker, 93 Tex. 390, 55 S. W. 740. The defective plea merely shifts the burden of proof from the plaintiff to the defendant, if it is not assailed, and, if he fails to establish his plea by proof, the plaintiff will recover. In the case of Fisher v. Bowser, 1 Posey, Unrep. Cas. 346, the court, after copying the statutes as to pleas of non est factum, said: "These statutes have no ambiguity in language used, and the courts have applied them as written. A plea of non est factum not sworn to requires, as does a general denial, the production of the instrument declar-

ed on. As to imposing upon the party pleading such instrument the burden of proving its execution, or his cause of action stated therein, it is a nullity. It may, if not excepted to, perhaps, form the basis of allowing the defendant the right to introduce his testimony, with the burden against him. Williams v. Bailes, 9 Tex. 64; Drew v. Harrison, 12 Tex. 279."

Mrs. Brett made no representation that she had authority to execute the contract for the corporation, and she told the general manager of appellant that she was buying supplies for herself. The material was never tendered nor delivered to the company, nor was there any offer to deliver it. As late as July, 1904, appellant wrote Mrs. Brett, as an individual and not as an officer, agent, or representative of appellee Telephone Company, and inquired as to when she would take the cables. Appellant was charged with knowledge that Mrs. Brett had no authority to bind the company. Appellant claims that the cables were sold to the Telephone Company, and not to Mrs. Brett, and, knowing that she had no authority to bind the corporation, she could not be held on an implied warranty.

The conclusions of fact, together with our conclusions of law, dispose of all the assignments of error.

The judgment is affirmed.