## R. B. SPENCER & CO. v. THORP SPRINGS CHRISTIAN COLLEGE et al.

### No. 12446.

Court of Civil Appeals of Texas. Fort Worth.
March 28, 1931.

Rehearing Denied April 25, 1931.

S. J. T. Smith, of Waco, for appellant.

J. H. Beavers, of Winnsboro, Estes & Estes, of Granbury, Kenley & Kenley, of Wichita Falls, R. T. Wilkinson, Jr., of Mt. Vernon, and J. M. Carter, of Fort Worth, for appellees.

CONNER, C. J.

This suit was instituted in the district court of Hood county on the 9th day of August, 1928, by R. B. Spencer & Company against the Thorp Springs Christian College, of Hood County, Tex., to recover the principal, interest, and attorney's fees due upon a promissory note executed in December, 1926,

for the principal sum of $1,440.17, with interest from its date at the rate of 10 per cent. and 10 per cent. attorney's fees if sued upon. The name of the Thorp Springs Christian College was signed to the note. by A. R. Holton, alleged to have been at the time the "duly elected, qualified and empowered president" of the college. The note was made payable to the order of the Hood County Lumber Company for lumber and building material alleged to have been used in the building and repair of one of the college buildings situated on lots 1 and 2, block 18, in Thorp Springs, upon all which a mortgage was expressly given to secure the payment of the note according to its terms. The plaintiffs alleged that they were the legal successors of the lumber company, and the legal owners of the note and mortgage, and they prayed for judgment and foreclosure.

The defendant college answered by a general demurrer, a general denial, and special pleas to the effect that the person who executed the mortgage and note sued upon was without authority to do so, and further that said instruments were void in that they were in violation of charter provisions of the defendant's charter. By a trial amendment, the college also pleaded the two-year statute of limitation.

J. L. Rutherford intervened in the suit, claiming title to the mortgaged property under a judgment and execution sale. Dr. T. H. Dabney, as chairman of the board of trustees of the college, also intervened and adopted the answer of the defendant college, alleging that said board had never authorized the execution of the note and lien sued upon. There are other interveners, all of whom will hereafter be referred to collectively as interveners.

The trial was by the court without a jury, and resulted in a finding and judgment that "plaintiff's statutory and constitutional lien" was void and the same was canceled and removed as a cloud upon the title of the defendant college. The plaintiff was further adjudged to pay all costs. The interveners were denied all recovery, but discharged "without prejudice in any way or manner to their respective rights and claims to the land and property involved in this suit as against the defendant and as against each other."

From the judgment so rendered, the plaintiff below has duly prosecuted this appeal.

The plea of want of authority in A. R. Holton to sign the note and mortgage. declared upon reads as follows: "For special answer this defendant says that it is not liable for the payment of the note or debt forming the basis of plaintiff's suit, because the same was executed by a person who had no authority under the law or under the charter of said corporation to execute notes and obligations for and in behalf of this defendant, and because

of the same reasons the purported mechanic's or materialman's lien or mortgage sought to be foreclosed, and which is described in plaintiff's original petition, is likewise null and. void, and of this the defendant prays the judgment of this court."

The following demurrer thereto appears in the plaintiff's petition: "Plaintiff excepts generally to the defendant's answer and the plea of intervention on file in this cause, says that the same are too general, remote and indefinite, and are each insufficient in law, allege no defense to plaintiff's cause of action and of this plaintiff prays judgment of the court."

Appellant, under an enlarged proposition, urges that the court erred in overruling the demurrer. We think the assignment and proposition must be overruled. The plea in terms is sufficient as against a general demurrer. It was duly verified by one of the counsel for the defendant, and the plea formally adopted by the intervener Dr. Dabney. Moreover, the record fails to show that the demurrer was ever called to the attention of or ruled upon by the trial court. See Central Lumber Co. v. Fall (Tex. Civ. App.) 264 S. W. 513. The demurrers and exceptions to the sufficiency of the extended pleadings of the various interveners will also be overruled in view of the fact that the several interveners were denied all affirmative relief and dismissed from the case, and no exception or objection to this action is presented in the record. Nor do we find prejudicial error in the rulings of the court in the introduction or rejection of the evidence. or other incidental proceedings. The vital question, as we view the record, is: Does the evidence support the trial court's finding and judgment that the mechanic's and constitutional liens claimed by the plaintiff below are void?

It is undisputed in the evidence that the predecessor of the plaintiff furnished the material for which the note and mortgage was given, and that the same was used in the improvement of the building located on the property described in the plaintiff's petition. It is also undisputed that the note and mortgage was owned by the plaintiff and executed by A. R. Holton on December 4, 1926, the signature being in the following form, viz.:

"Thorp Springs Christian College
"A. R. Holton."

On the same day Holton executed a written instrument reciting the purchase of the lumber, the price to be paid therefor, etc., for the purpose of fixing a materialman's lien on the property. This instrument was signed:

"Thorp Springs Christian College
"A. R. Holton, Pres."

No objection to the form of this instrument has been urged, and it was duly acknowledged by Holton and recorded in the office of the

county clerk of Hood county on the 6th day of December, 1926. This instrument is declared upon as a statutory materialman's lien, for the foreclosure of which the plaintiff prays. The plaintiff also pleaded the facts of Holton's purchase and use of the lumber in the repair of the building mentioned as a lien under the terms of the Constitution. The plaintiff also alleged that Holton had been held out by the defendant college as having authority to make purchases and contracts of the kind, and that the facts mentioned estopped the college from denying the relief sought.

■ It is apparent, therefore, that a vital question for our determination is whether the trial court erred in the finding that must be imputed to his judgment that A. R. Holton was wholly without authority to make the purchase of the material and execute the obligations as shown. After due consideration, we feel unable to say that the court erred in this respect. We think we must say that the defendant college introduced testimony, not subject to the objections made, that at least tends to show that Holton was without authority from the college to make the purchase and execute the note and mortgage in controversy.

The evidence shows that the college was incorporated under the general incorporation laws to be found in volume 1, Vernon's Sayles' Statutes 1914, authorizing incorporations for educational purposes. These laws provide for the election of a board of directors or trustees, which, by article 1159, "shall have the general management of the affairs of the corporation." The amended charter under which the defendant was acting at the time of the sale and mortgage in question provided that the "college shall be managed and controlled as hereinafter set forth by a Board of Trustees. * * *" The board of trustees were required to have "(a) presiding officer" and (2) elect a "president (and) other teachers of the college; a treasurer * * * and such other agents as the Board may deem advisable."

The charter also contains the following special provision, to wit: "This corporation shall never mortgage nor place a deed of trust or other lien on any of its properties for any purpose, nor shall it, save for current expenses, incur indebtedness at any time during its term of existence."

Dr. T. H. Dabney testified in behalf of the defendant, among other things, that: "We (the college) bought out the property * * * in 1909. * * * I have been a member of this board (of trustees) since elected in 1909. I have never resigned. * * * I remained as chairman of this institution, that was organized in 1910. I remained Chairman of that Board * * * from 1910 until about 1906 or 1907 [1926 or 1927] along. * * * Now these articles were never changed by the Board of Directors of the institution, and no change was ever suggested or made to these articles [unless perhaps as to the number of trustees]. We held the property in trust for the Church of Christ all over the world. * * * I did not, as a member of the Board of Trustees, nor did the Trustees of that institution, ever authorize anybody to put a lien on that property, and I never knew it was on there until this suit was brought. I never knew it until today, right here in the court, and I have been right here all the time, that is, I was here in town. Spencer has had a business here for a number of years, but I never knew there was a lien until today here in court. * * * I remember the Woodhouse transaction. I made it. I understand now that that's the property that is involved in this suit, and I understand that they are attempting to foreclose a lien on what they call the Rutherford Hall, which is one of the dormitories. The connection I had with this property is that I bought it. The funds were furnished to buy that property by a Dr. Miller's mother-in-law, Mrs. Murphy, donated to the school. But I bought the property, but that consideration was paid by monies donated by Mrs. Murphy. * * * As president of the school, Mr. Holton's duties were to hire teachers, and pay the teachers, and manage the operations of the school, and draw up student attendance, collection of tuition, run the dormitories to board students, and [take] notes for students. I never at any time gave him authority and authorized him to control the properties, the real estate of that institution, in making loans, placing liens on it and there was never a resolution passed authorizing that. * * * We frequently had to buy coal in the summer time when it was hot and get it in here in time for winter. We didn't have the money, and then we would come and get it, would borrow the money, and he would come to me and I would go on his note; that was one instance. Sometimes they might advance me as much as a thousand dollars; when we were compelled to advance it by the school, we had to go on it not as trustees, but as personal securities, and personal liabilities. I never did endorse any note as an officer of the school. It was personal liability alone. I know of no instance where the trustees as a body, authorized anyone as a representative of that school to place an incumbrance on any of the real estate. I didn't do it. When we bought this piece of property known as the Rutherford Hall, we paid all of the consideration in cash. We bought it in for the college, and it become a part of the college property of the Thorp Springs Christian College."

Cross-examined, he said: "I never do authorize any one to sign any note in behalf of the college, there, for any amount. * * * Holton was not President of anything except the college, the educational department."

The cross-examination further developed

that Holton was elected a member of the board of trustees about two years before he left, which was, the witness thought, "about 1928," according to his best recollection. That "after he was elected a member of the Board, or while he was employed by the people, he, as a matter of fact, exercised general supervision of the school out there. Sometimes he purchased material for the improvement and betterment of the school out there. I think he did; there wasn't much purchasing made out there, in the improvement; improvement that some times they would want to fix or buy and he would buy our supplies there of the actual working there, I think he did. I think he did buy that and pay for it out of the institution's funds. He took that authority. We didn't give him that. We never objected to it."

The cross-examination of this witness further developed that after Holton became a trustee, that he, together with Holton, a number of times, signed notes as comakers. That he saw the building in question going on, but supposed the building was being improved with donations from different individuals over the country, and that Holton was doing it; that he did not inquire into that, and he knew that none of the other trustees knew of it as none of them lived there so as to have a meeting; that he never objected to any of the accounts that Mr. Holton made or that he paid for. That he (Holton) "took all the monies in, received all the monies, and paid out all the monies, and he fell down on it, and that Trustees came over and had to dig up. * * * I didn't know anything about this account for these liens or anything of that kind. I never knew anything about that until today, and heard him read it. As far as that building that he spoke about, I suppose it was being built and being improved. I knew it because I saw it. My impression was that it was built by donations over the state, that had an interest in the school. I never did know the property was being incumbered, that is, the dormitory. The big dormitory they were building. * * * The Board of Trustees at no time ever passed any resolution authorizing Holton and we never did at any time authorize him to incur any indebtedness with improving that building. * * * We did not ratify anything about this lien; we did not know it at all to ratify it. * * * We did not give him authority to incumber the property at all. Knowing the situation and having been and was, Chairman of the Board at the time, if I had known that Holton was making this indebtedness, and creating a mechanic's lien on this property, I would not have ratified that for the reason that the charter provided against it."

T. A. Davidson, another member of the board, testified in substance, among other things, that at the time the improvements in question were being made, he knew of it, but knew that a subscription list was being circulated to pay for the improvements and that he understood and believed that the improvements were being paid for in that way and did not know until the suit of the procedure engaged in by Holton.

J. L. Rutherford, one of the trustees and member of the board of directors, testified, among other things, that he knew of the improvements in question at the time they were being made, but that he donated toward them and he understood* and thought that they were being paid for by donations from private persons, and did not know until the date of the trial that they were purchased on credit and that Holton had undertaken to mortgage the real estate of the corporation for indebtedness.

■ There was other testimony conflicting perhaps in particulars with that given by Dr. Dabney and others, but the trial court was the judge ·of the credibility of the witnesses and the weight to be given to the testimony, and the most favorable view of it, of course, must be taken by this court. At all events, however, there is an entire absence of evidence that the board of trustees, as such, authorized or had their attention called to Holton's acts in purchasing the lumber and executing the note and mechanic's lien in controversy.

Section 37, of article 16, of the Constitution, provides that: "Mechanics, artisans and material men, of every class, have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the legislature shall provide by law for the speedy and efficient enforcement of said liens."

Pursuant to the direction thus given, the Legislature [article 5621 of vol. 4, Vernon's Sayles' Statutes] undertook to comply with the mandate of the Constitution to provide for the enforcement of materialman's liens. The article referred to was amended by Act approved March 31, 1917, 35th Legislature, page 383, c. 171, § 1. It is there provided that "any person or firm, lumber dealer or corporation, artisan, laborer, mechanic or subcontractor who may labor or furnish material, machinery, fixtures or tools to erect any house or improvement or to repair any building or improvement whatever * * * shall have a lien on such house, building, fixtures, improvements, * * * and shall have a lien on the lot or lots of land necessarily connected therewith. * * *"

Article 5622 of Vernon's Sayles' Statutes provides that: "In order to fix and secure the lien herein provided for, it shall be the duty of every * * * person seeking to obtain the benefits of the provisions of this law * * * to file his or their contract in the office of the county clerk of the county in which such property is situated. * * *"

The next article (5623) provides: "Any person, firm, or corporation, who may furnish any material to any contractor, sub-contractor, agent, or receiver, to be. used in the erection of any house, building or improvement, or to repair any house, building or improvement, * * * by giving written notice to the owner or his agent of such house, building or improvement, * * * may fix and secure the lien provided for in this chapter," etc.

■ It is thus seen that notice to the owner, or to his authorized agent, is necessary in order that the statutory lien may be fixed. Such has been the uniform holding of our courts. Thus it is said in the case of First National Bank v. Lyon-Gray Lumber Co. (Tex. Civ. App.) 194 S. W. 1146, that, quoting from the headnotes: "Under Rev. St. arts. 5621, 5623, giving materialmen mechanics' liens, and requiring the giving of notice to the owner and filing with county clerk, the provisions regarding notice are mandatory."

See also same case, by the Supreme Court, as reported in 110 Tex. 162, 217 S. W. 133; and Ball v. Davis, 118 Tex. 534, 18 S.W.(2d) 1063, also by the Supreme Court.

In the case of Sheer v. Cummings, 80 Tex. 294, 16 S. W. 37, it appears that Mrs. Jane Cummings, the mother of John Cummings, who owned the lot there in controversy, entered into a contract and pursued proper proceedings to fix a mechanic's lien on the lot, but it was held that a mechanic's lien cannot be established against the owner of land without his knowledge or consent, and further that even if the mother had claimed to act as agent, but without authority, the doctrine of ratification would not apply because his taking possession of the improvements must then have been referred to his ownership of the land. This case has been cited with approval a number of times since. See McCallen v. Mogul Producing & Refining Co. (Tex. Civ. App.) 257 S. W. 918; Campbell v. Teeple (Tex. Civ. App.) 273 S. W. 304, 305; Morrison v. State Trust Co. (Tex. Civ. App.) 274 S. W. 341. It seems clear, therefore, that the court below correctly denied plaintiff the mechanic's lien upon which he declared for want of the proper notice.

■■ However, if the foregoing conclusions should for any reason be deemed inconclusive, the want of authority in Holton to make the purchase and execute the materialman's lien is more certainly shown by referring to section 11 of the charter, which inhibits the imposition of a lien of any character upon the property of the college. A corporation is an artificial person, and under the statutes can only act by and through its duly and legal constituted officers. The charter, under the statutes, measures the power to the exclusion of all others not expressed or that may be fairly implied.

In the case of Standard Underground Cable Co. v. Southern Independent Telephone Co. (Tex. Civ. App.) 134 S. W. 429, 432, the court, among other things, said: "It clearly appears that the directors of the Telephone Company had never authorized Mrs. Brett to buy any material or assume any debts for them, and the by-laws did not clothe her with any such authority, and the general law as to the authority vested in the president and secretary of a corporation to make purchases, or to assume the indebtedness of another, must be looked to to determine the power and authority vested in Mrs. Brett. It is the general rule that the president of a corporation has no power to buy, sell, or contract for the corporation, nor to control its property or funds, in the absence of anything in the act of incorporation or the action of the board of directors clothing him with such power. He has without such special authority no more control over the corporate property and funds than has any other director. [Citing authorities.] In the last case cited, it was held that a corporation cannot be held liable where its president, without corporate action, being shown, assumed the debts of a person, even though the money arising from the transaction came into possession of the corporation."

In the case of Adkins-Polk Co. v. Pate (Tex. Civ. App.) 11 S.W.(2d) 654, we take the following from the syllabus: "One who seeks to hold a corporation liable upon a contract made by an agent has the burden of proof, not only of the execution of the contract for the corporation, but the authority of the agent through whom it is claimed the corporation acted."

In the case of Prairie Lea Production Co. v. Lincoln Tank Co. et al. (Tex. Civ. App.) 294 S. W. 270, 271, the court in its opinion, among other things, said: "Under the statute, the directors have general management of the affairs of the corporation. Article 1327, R. S. 1925. And the general rule is that the president of a corporation, in the absence of authority conferred by its charter, or specially vested in him by the board of directors, has no more power or authority to contract or act for the corporation than any other officer. Standard Cable Co. v. Tel. Co. (Tex. Civ. App.) 134 S. W. 433; Railway Co. v. Logue (Tex. Civ. App.) 139 S. W. 11; El Fresnal Irrigated Land Co. v. Bank (Tex. Civ. App.) 182 S. W. 701. There is no evidence as to what powers the charter of appellant corporation conferred upon its president."

In the case of Vacarezza v. Realty Industrial Co. (Tex. Civ. App.) 165 S. W. 516, 517, the court in its opinion, among other things, said:

"Article II, section III, of the by-laws of the corporation provides that the president shall sign all papers and contracts, deeds, etc., and article IV provides that no purchase

or sale of realty shall be consummated without the consent of the board of directors. The evidence clearly shows that the consent of the board of directors was never given in this matter. Furthermore, the undisputed testimony shows that the contract was really made for the benefit and on behalf of R. H. Wester Company, and that Vacarezza thought he was dealing with that company.

"A corporation, being a creature of the law, must act and be bound as the law provides. Parties dealing with it are charged with the duty of knowing this. They must know that whatever power the agent has is derived from the board of directors."

If, therefore, article II of defendant's charter is available as a defense, it must certainly follow that neither Holton nor any trustee or the board as a whole had authority to incumber the real property of the institution. The record, as already shown, indicates that the property of the college was acquired and many of its needs supplied by the voluntary contributions of citizens, and the purpose of the charter provision was apparently for the protection of such contributors.

The charter provision referred to has not been assailed, but it occurs to us that it might be said that it was violative of the constitutional provision granting materialman liens, and also perhaps of subdivision 4 of article 1140, of Vernon's Sayles' Statutes, which confers the right upon corporations generally "to purchase, hold, sell, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require, * * *", and therefore inhibited by article 1135, Vernon's Sayles' Statutes, vol. 1. That article relates to amendments of charters and provides specifically that: "No amendment or change violative of the constitution or laws of this state or any of the provisions of this title shall be of any force or effect. * * *"

■ But waiving the above suggestion as unimportant in this case, it was held in Strang v. Pray, 89 Tex. 525, 35 S. W. 1054, that the constitutional provision for mechanic's lien was enforceable regardless of the proceedings required by the statute, and this case has been followed by Trammell v. Mount, 68 Tex. 210, 4 S. W. 377, 2 Am. St. Rep. 479; Keating Implement & Mach. Co. v. Marshall Elec. Light & Power Co., 74 Tex. 605, 12 S. W. 489; Farmers' & Mechanics' Nat. Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966. By an examination of those decisions, however, it will be seen that in each instance the owner of the property had notice of the facts which brought the case within the purview of the decision, and we have therefore concluded that whatever might be the effect of the constitutional and statutory provisions on section 11 of the defendant's amended charter, in cases where the person or corporation owning the property has notice and consent to the fact of material being furnished, used, and retained, that in the present case, a want of notice and consent of the college being shown by the evidence and found by the court, the doctrine in the case of Strang v. Pray and those following cannot be applied here. We have already referred to the case of Sheer v. Cummings, which was a case in which it was sought to enforce a mechanic's lien for materials furnished in the erection of a house upon land owned by John Cummings, and where it was held that it having appeared that Jane Cummings, who contracted for the material, was without authority to do so, no lien attached as against the son, and that this was true even though the mother had claimed to act as the son's agent. And it was further held there that the doctrine of ratification would not apply as against the son because of his taking possession of the improvements, his possession in that case being made referable to his ownership of the land.

■ In the case of Morrison v. State Trust Co., supra, it was said, by the Amarillo Court of Civil Appeals, that the placing of improvements on property of another, without express or implied agreement with the owner to pay for them, was not entitled to a mechanic's lien. While the case was reversed by Section A of the Commission of Appeals (282 S. W. 214), the expression of the Amarillo Court to which we have just referred, was not repudiated. To the same effect in principle we think is the case of Campbell v. Teeple, by the San Antonio Court of Civil Appeals, 273 S. W. 304. Indeed, it would seem to be uncontrovertible that neither the constitutional nor mechanic's lien could be fixed or enforced upon land owned by another without notice to or authority from such owner. In Fitzhugh v. Franco-Texas Land Co., 81 Tex. 307, 16 S. W. 1078, it is held that all persons dealing with a corporation must take notice of the powers conferred upon it by its charter and that its agents cannot exercise any authority in excess of those powers. The record also discloses that Thorp Springs Christian College held under a deed executed by the former holder on the 26th day of September, 1918, conveying the lots in controversy, together with other properties, to T. H. Dabney, chairman of the board of trustees of the college and his associates in trust, for the benefit of the college, "upon the express condition that the property herein conveyed shall never be mortgaged and upon the condition that they and their successors shall hold the same in trust for the Church of Christ." This deed was duly acknowledged and recorded in Hood county on the day of its execution and of which the plaintiff below had constructive notice by virtue of our registration statutes. The plaintiff was also required to take notice of the terms

of the charter of the college and hence affected with notice of the powers conferred by the charter upon its operating agencies. The charter, as already seen, plainly confers control upon the board of directors alone. Regardless, therefore, of the section of the charter which inhibits the imposition of liens on property of the college, the plaintiff must be held to have known that in no event could he fix a valid lien on the property in question in the absence of notice to, and the consent of, the controlling agencies of the college, and the evidence is undoubtedly sufficient to support a finding that the plaintiff failed to give the necessary notice or obtain the necessary consent.

The plaintiff in this case for some reason sought for no relief other than the establishment and foreclosure of his alleged liens, and we therefore finally conclude that neither of the asserted liens of the plaintiff in this case is enforceable, and that under the authorities cited, the fact that the college retains possession of the building, which is a fixture upon the lots, does not amount to an estoppel on the part of the college nor yet to a ratification of the unauthorized acts of Holton.

The judgment below will accordingly be in all things affirmed.