**Pat CHAPMAN, Appellant,**

v.

**MITSUI ENGINEERING AND SHIP-BUILDING CO., LTD., Harlan Stein, and Gordon Bing, Appellees.**

**No. 01–88–01202–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 10, 1989.

Rehearing Denied Oct. 26, 1989.

Tom Alexander, David J. Sacks, Alexander & McEvily, Houston, for appellant.

Leymon L. Solomon, Charles S. Wuest, Chamberlin, Hrdlicka, White, Johnson & Williams, Philip P. Sudan, Jr., Jeffery T. Nobles, Ryan, Shoss, Sudan & Rothfelder, Houston, for appellees.

Before EVANS, C.J., and DUNN and MIRABAL, JJ.

## OPINION

EVANS, Chief Justice.

Pat Chapman appeals from a take-nothing summary judgment in his suit against the appellees, Mitsui Engineering & Shipbuilding Co., Ltd. (Mitsui), Harlan Stein, and Gordon Bing. Chapman filed this suit in January 1987, alleging that the appellees conspired to defraud him and tortiously interfered with his business relationship with a third party, Glitsch Field Services, Inc. (Glitsch), a wholly-owned subsidiary of Foster Wheeler, Inc.

In his petition, Chapman alleged that he owned 100% of the stock in a Canadian holding company known as Paje Rosha Holdings, Ltd., which in turn owned 100% of another Canadian corporation known as Western Stress Relieving Services, Inc. (WSRSI). He alleged that WSRSI owned 100% of the stock in a Texas corporation known as Western Stress, Inc. (WSI), and that he, individually, owned 100% of the stock in a second Texas corporation known as Universal Stress Relieving, Inc. (USRI).

Chapman alleged that, in 1985, he started negotiating the sale of his stock in the latter three corporations, and that he hired the appellee, Bing, as his head negotiator. He said that Bing searched for purchasers and eventually began discussions with Mitsui, who designated the appellee, Stein, as its head negotiator. On April 16, 1986,

Mitsui sent Chapman a letter indicating its intention to begin discussions concerning the acquisitions of WSI, and on April 25, 1986, Mitsui sent a proposed Letter of Understanding to Chapman regarding such negotiations. According to Chapman's petition, the terms of the April 25 letter were unacceptable as proposed, and he modified the letter and forwarded his counter-proposal to Mitsui in early May 1986. He alleged that Mitsui never responded to his counter-proposal.

Chapman alleged that he thereafter began negotiations to sell his stock in WSI and USRI to Glitsch. As a result of such negotiations, he alleged, Chapman and Glitsch entered into a letter agreement on June 18, 1986, for Glitsch's purchase of the WSI and USRI stock for $2,350,000.

One day later, June 19, 1986, Chapman alleged, he told Bing of his agreement with Glitsch, and Bing informed Stein of the Chapman/Glitsch agreement. Chapman alleged that either Stein or another Mitsui representative immediately contacted Foster Wheeler, and told it that Chapman had an exclusive agreement with Mitsui, and that Glitsch must stop all negotiations with Chapman. According to Chapman's petition, Glitsch, on receiving that advice, immediately advised Chapman that it was cancelling any contracts or negotiations between them.

Chapman alleged that Stein and Bing would have received a "hefty commission" from the sale of the stock purchase by Mitsui, but would not have received a commission on a sale of the stock to Glitsch. After the appellees allegedly interfered with his business relationship with Glitsch, causing Glitsch to terminate that deal, Chapman said Bing and Stein convinced him that further discussions with Glitsch would be meaningless. He then entered into an agreement with a wholly-owned subsidiary of Mitsui, which had been created to purchase his WSI and USRI stock. This "substitute" sale, Chapman asserts, was significantly less valuable than his deal with Glitsch, and he sold to Mitsui only to reduce his loss.

In addition to his allegations regarding tortious interference, Chapman alleged that both Stein, acting on his own behalf and on behalf of Mitsui, and Bing had defrauded him, and that "some" of the false representations made to him by Stein and Bing were: (1) Bing would represent Chapman's best interests in negotiating the stock purchase, and (2) Glitsch would no longer deal with Chapman under any circumstances.

In addition to such allegations of common law fraud, Chapman alleged that Bing and Stein had committed statutory fraud under Tex.Bus. & Com.Code Ann. sec. 27.-01 (Vernon 1987), and that Mitsui, Stein, and Bing entered into a fraudulent conspiracy and took concerted action to prevent his making the sale to Glitsch and to induce him to enter into the stock purchase agreement with Mitsui.

Chapman claimed actual damages in excess of $850,000, and he also sought punitive damages and attorney's fees.

The appellees, Mitsui, Stein, and Bing, asserted affirmative defenses of privilege, estoppel, waiver, election of remedies, and laches.

Mitsui and Stein filed a joint motion for summary judgment in which they asserted that Chapman could not recover on any of his claims, because at the time he was negotiating to sell his corporations to Glitsch, he was a party to a binding agreement (the "Letter of Understanding") with Mitsui, which precluded him from negotiating a sale to anyone except Mitsui. In support of the summary judgment motion, Mitsui and Stein attached a copy of the Letter of Understanding, with Chapman's modifications, and Chapman's admissions regarding its execution. Appellee Bing filed a separate motion for summary judgment that adopted the arguments contained in the motion of Mitsui and Stein.

The trial court's docket sheet indicates that on April 26, 1988, the court granted a summary judgment for Mitsui, Stein, and Bing, and that on July 30, 1988, the court granted Chapman's "motion for rehearing." On September 1, 1988, the trial court signed the judgment, which is the subject of this appeal, that recites the court con-

ducted a "rehearing" in the matter and that it then "reexamined the pleadings and the Summary Judgment evidence" before it.

Mitsui, Stein, and Bing argue respectively, that the additional summary judgment proof, submitted with Chapman's motion for rehearing, was not properly considered by the trial court because such materials were filed after the first hearing held in March or April 1988.

■ When a motion for new trial has been filed after the entry of the summary judgment, a court may usually consider only the record as it existed prior to the granting of the summary judgment. *Parchman v. United Liberty Life Ins. Co.*, 640 S.W.2d 694, 696 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Therefore, a trial court does not abuse its discretion in refusing to consider summary judgment materials filed after the summary judgment hearing. *Hill v. Milani*, 678 S.W.2d 203, 205 (Tex.App.—Austin 1984), *aff'd*, 686 S.W.2d 610 (Tex.1985); *Jones v. Hubbard*, 302 S.W.2d 493, 496 (Tex.Civ. App.—Waco 1957, writ ref'd n.r.e.). A trial court may, however, decide to grant a new trial and if it does so, it may proceed to consider further summary judgment motions and proof.

■ Here, when the trial court granted Chapman's "motion for rehearing," that ruling vacated any prior judgment in the case. A "motion for rehearing" is the equivalent of a motion for a new trial. *Hill v. Bellville Gen. Hosp.*, 735 S.W.2d 675, 677 (Tex.App.—Houston [1st Dist.] 1987, no writ). When a court grants a new trial, the effect of its ruling is to set aside all proceedings and to reinstate the cause on the docket as though it had not been tried. *Wichita Falls Traction Co. v. Cook*, 122 Tex. 446, 455, 60 S.W.2d 764, 768 (Tex. Comm'n.App.1933, opinion adopted). In this case, when the court vacated its prior ruling, it did not abuse its discretion in considering summary judgment proof filed after the time of the earlier hearing.

We further note that the transcript does not contain any summary judgment other than the final judgment dated September 1,

1988, which is the subject of this appeal. Although the trial court's docket sheet indicates the court made a ruling on the motion for summary judgment in April 1988, that docket entry does not, in itself, constitute a judgment. *Formby's KOA v. BHP Water Supply Corp.*, 730 S.W.2d 428, 430 (Tex. App.—Dallas 1987, no writ). It is possible the court simply made a preliminary ruling in April 1988, and withheld making a final decision at that time. In this respect, we note that while Chapman's motion is termed a "motion for rehearing," the name by which a motion is designated does not necessarily determine its true character. *See Bryce v. Corpus Christi Area Convention and Tourist Bureau*, 569 S.W.2d 496, 498 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

The trial court's summary judgment does not specify the ground or grounds on which its ruling is based. Therefore, we must affirm the judgment if any theory asserted in the motion is meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

In a single point of error, Chapman asserts that the summary judgment is erroneous because Mitsui, Stein, and Bing failed to prove, as a matter of law, that they were privileged to interfere with Chapman's contractual relations with Glitsch, or that Chapman's claims were barred, as a matter of law, by the doctrines of estoppel, waiver, laches, or election of remedies.

A claim of tortious business interference may be defeated if a defendant establishes that such interference occurred with legal justification or excuse. *Sakowitz v. Steck*, 669 S.W.2d 105, 107 (Tex.1984); *Capital Title Co. v. Donaldson*, 739 S.W.2d 384, 390 (Tex.App.—Houston [1st Dist.] 1987, no writ). The issue of privilege is an affirmative defense upon which the defendant has the burden of proof. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989).

If a valid contract existed between Chapman and Mitsui that provided that WSI would not negotiate a sale of its assets of stock with another company until negotiations with Mitsui had terminated, Mitsui

and its agent, Stein, would have been privileged to advise Glitsch of Mitsui's rights under the contract. *B. Cantrell Oil Co. v. Hino Gas Sales, Inc.*, 756 S.W.2d 781, 784 (Tex.App.—Corpus Christi 1988, no writ).

Whether parties intend to make a contractual agreement is usually a question of fact. *See Scott v. Ingle Bros. Pac. Inc.*, 489 S.W.2d 554, 556 (Tex.1972); *Henry C. Beck Co. v. Arcrete, Inc.*, 515 S.W.2d 712, 716 (Tex.Civ.App.—Dallas 1974, writ dism'd w.o.j.). But whether a particular agreement constitutes a valid contract is generally a legal determination that the court must make. *See Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 156–157 (Tex.App.—Texarkana 1988, no writ); *Success Motivation Inst., Inc. v. Jamieson*, 473 S.W.2d 275, 280 (Tex.Civ.App.—Waco 1971, no writ).

In this case, the threshold issue is whether Chapman's modification to the Letter of Understanding constituted a counter-offer, which required Mitsui's acceptance before becoming a binding contract. This is an issue of law requiring this Court's determination.

The Letter of Understanding, and the modification language affixed by Chapman, are as follows:

### Letter of Understanding

Dear Mr. Chapman:

Please refer to our letter dated April 16, 1986.

In order to make our proposed transaction more viable and smooth, we would appreciate it very much if you and your Corporation will not offer, discuss, negotiate or seek an acquisition, merger, or purchase or sale of the business or assets of your Corporation or the sale of any and all the shares of your Corporation with another company, person or entity other than our Company until the occurence of a written communication by either yourself or our Company to terminate the negotiation, definitely.

We shall not directly or indirectly disclose or communicate to any third party, except for the advisors whose names were mentioned in our letter dated April 16, 1986, any information or matters which may be exchanged between our respective firms regarding your company without first receiving prior approval to release such information from you.

It is clearly understood that this letter create [sic] no obligation on behalf of either party other than to proceed to negotiate in good faith the terms and conditions of the definitive agreement with respect to the subject matter thereof.

If the foregoing is acceptable to you, please signify your agreement by signing and returning a copy of the this letter to the undersigned.

Very truly yours

MITSUI ENGINEERING & SHIPBUILDING C., LTD.

By /s/ Yoshiharu Ikuta, Managing Director

Agreed to:

### Modification Language

Western Stress, Inc. (initialled PC) Western Stress Relieving Services, Inc. (initialled PC)

Universal Stress–Relieving, Inc. (initialled PC)

By /s/ Pat Chapman, President

This is with the understanding that both parties will continue to diligently work to close this transaction. As discussed in the meetings of May 1 & 2, the objective is to settle all matters and conclude necessary documentation on or before June 30, 1986.

/s/ Pat Chapman

■ An acceptance must not change or qualify the terms of an offer, and if it does, the offer is rejected. *United Concrete Pipe Corp. v. Spin–Line Co.*, 430 S.W.2d 360, 364 (Tex.1968). Any material change in a proposed contract constitutes a counter-offer, which, in turn, must be accepted by the other party. *Arguelles v. Kaplan*, 736 S.W.2d 782, 785 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Here, the undisputed evidence shows that Chapman was unwilling to sell his WSI stock unless his WSRI and USRI compa-

nies were also included in the sale. When Chapman, by his modification to the Letter of Understanding, added those two companies to the agreement, that addition constituted a material change in the terms of the initial proposal, requiring Mitsui's acceptance before it ripened into a valid contract. *See Arguelles,* 736 S.W.2d at 785; *UTL Corp. v. Marcus,* 589 S.W.2d 782, 784 (Tex. Civ.App.—Dallas 1979, no writ).

■ In Chapman's affidavit, attached to his motion for rehearing of the appellee's summary judgment motion, he states that Mitsui never responded to his counterproposal and simply ignored it.[1] Thereafter, on June 17, 1986, Chapman and Bing met with Mitsui and its representatives, including Harlan Stein, and negotiated a new letter of intent. Mitsui then submitted this letter of intent to him, but immediately withdrew it. Because of Mitsui's withdrawal of the letter, Chapman states he did not reach an agreement with Mitsui, and, on June 18, 1986, he believed any deal with Mitsui would be impossible. He then finalized an agreement with Glitsch, and told Bing to inform Stein about the consummation of his deal with Glitsch. On June 19, 1986, Bing told Stein about Chapman's agreement with Glitsch, and Stein had one of his associates contact Foster Wheeler to "kill the deal." Bing and Stein then convinced Chapman that the Glitsch deal was dead, and told him that unless he entered into an agreement with Mitsui, Mitsui would destroy his companies like it had his deal with Glitsch.

■ Although Chapman later entered into a contract for the sale of all three companies to Mitsui's subsidiary, that fact does not conclusively establish any of the affirmative defenses asserted by Mitsui, Stein, and Bing in response to Chapman's suit. A privilege may be asserted under theories of waiver, estoppel, or oral contract, but it must be founded on some colorable legal right. *Sakowitz,* 669 S.W.2d at 107. Here, the summary judg-

ment proof clearly shows that the Letter of Understanding, with Chapman's modification, was never signed by Mitsui and returned to Chapman. To the contrary, Chapman states, Mitsui simply ignored it. At best, the summary judgment proof presents a fact issue on Mitsui's acceptance of Chapman's counter-proposal.

To be entitled to summary judgment, Mitsui, Stein, and Bing were required to establish the absence of any genuine issue of material fact, and to prove conclusively all elements of their affirmative defenses. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–311 (Tex.1984). This, they failed to do, and we therefore reverse the judgment and remand the cause. Because of this disposition, we need not discuss Chapman's further contentions that the summary judgment proof failed to conclusively negate his allegations of common law and statutory fraud.

The judgment of the trial court is reversed, and the cause is remanded.

## ON MOTIONS TO SUPPLEMENT THE RECORD AND FOR REHEARING

The appellees, Mitsui and Stein, have filed, along with their motion for rehearing, a motion to supplement the record by including their motion to strike Chapman's original affidavit in the summary judgment proceeding. The appellee, Bing has filed a motion for rehearing.

In their motion to supplement, Mitsui and Stein point out that this Court, in its earlier opinion, found that because Mitsui and Stein failed to file written objections in the trial court, they waived any procedural objections to Chapman's affidavit.

■ Texas Rules of Appellate Procedure 55(c) provides that an appellate court may enter such orders as may be necessary to secure a more satisfactory submission of a case when it becomes apparent "during submission or after" that the case has not been properly prepared as shown in the

---

**1.** Mitsui, Stein, and Bing object to our consideration of Chapman's original affidavit because it shows on its face that Chapman's sworn verification was taken by the notary public over long distance telephone. We overrule this objection because no objection was presented to the trial court to preserve the asserted error. *See* Tex.R. App.P. 52(a).

transcript. Under the predecessor to this rule, former rule 428, it has uniformly been held that supplemental transcripts will not be allowed after a court has written its opinion and rendered its judgment, absent some unusual circumstances. *Missouri–Kansas–Texas R.R. Co. v. Alvarez*, 670 S.W.2d 338, 353–54 (Tex.App.—Austin) (op. on reh'g), *rev'd on other grounds*, 683 S.W.2d 375 (Tex.1984); *Elkins v. Auto Recovery Bureau*, 649 S.W.2d 73, 76–77 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) (op. on reh'g); *Stanfield v. Kroll*, 484 S.W.2d 603, 608 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.) (op. on reh'g). In their motion to supplement, Mitsui and Stein state only that they "inadvertently failed to designate" their joint motion to strike Chapman's affidavit. Their motion to supplement does not set forth any "unusual circumstances" that would justify supplementation of the appellate record at this late date. The motion to supplement is denied.

We further conclude that even if we did not consider Chapman's first affidavit, his second affidavit raises genuine issues of material fact precluding a summary judgment. As we stated in our earlier opinion, the trial court's summary judgment recites that the court conducted a rehearing in the case and reexamined the pleadings and summary judgment evidence before it. Thus, Chapman's second affidavit constituted competent summary judgment proof in opposition to the motion for summary judgment.

In their motion for rehearing, Mitsui and Stein argue that they were not required to prove a binding contract between Mitsui and Chapman, and were obliged only to show that Mitsui had a *colorable* legal right when Mitsui told Glitsch that Chapman was contractually bound to negotiate exclusively with Mitsui. They contend that even if Chapman's notations on the Letter of Understanding did constitute a counteroffer to Mitsui's proposal, the summary judgment proof conclusively showed Mitsui "believed" Chapman had accepted the Letter of Understanding.

We do not agree that summary judgment proof conclusively established either that Mitsui had a *colorable* legal right, or that

it acted on the belief that Chapman had entered into a binding contract precluding his negotiations with Glitsch. To the contrary, Chapman's affidavit, which asserted that Mitsui simply ignored his counterproposal, raised a fact issue both as to the existence of Mitsui's colorable legal right and its belief at the time.

To prevail on their motion for summary judgment, Mitsui and Stein were required to prove each element of their defense of privilege by uncontroverted summary judgment proof. *See Sterner v. Marathon*, 767 S.W.2d 686 (Tex.1989) (overruling *Sakowitz v. Steck*, 669 S.W.2d 105 (Tex.1984), to the extent it held that the defense was *not* an affirmative defense). Mitsui and Stein did not meet their burden in this respect and, therefore, were not entitled to a summary judgment. We accordingly overrule their motion for rehearing.

We also overrule Bing's motion for rehearing, in which he asserts the defense of privilege because his claimed status as Chapman's agent entitled him to summary judgment. We find no summary judgment evidence conclusively establishing his claim of privilege based on an agency relationship.

The motions for rehearing of Mitsui, Stein, and Bing are overruled.