**Opinion issued January 23, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

—————————————

**NO. 01-22-00052-CV**

—————————————

**AGGREKO, LLC, Appellant**

**V.**

**BRONXCARE HEALTH SYSTEM, FORMERLY KNOWN AS THE BRONX-LEBANON HOSPITAL CENTER, Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-56916**

---

## MEMORANDUM OPINION

An employee of appellant, Aggreko, LLC, was fatally injured on the premises of appellee, Bronxcare Health System, formerly known as The Bronx-Lebanon Hospital Center (BLH). Because of worker's compensation laws, the decedent's heirs and estate could not file suit against Aggreko. Therefore, they

sued BLH in New York state court. BLH in turn filed third-party claims for common-law indemnity against Aggreko. In the New York state suit, Aggreko moved to dismiss and enforce provisions contained in its Terms and Conditions, providing a forum-selection clause requiring litigation in Harris County and barring indemnification. The New York court denied the motion to dismiss and refused to enforce the forum-selection provision. It further granted summary judgment in favor of BLH, concluding that Aggreko failed to show an enforceable contract including the Terms and Conditions and determining that BLH was entitled to common-law indemnity. Aggreko ultimately settled with the decedent's family.

After the case was resolved in New York, Aggreko filed the instant suit in Texas court seeking indemnification under its purported contract with BLH for the amount Aggreko paid to settle the New York lawsuit. BLH filed a special appearance asserting that (1) Aggreko cannot establish that BLH had minimum contacts with Texas; (2) there was no agreement between the parties supporting Aggreko's forum-selection argument, and (3) even if such an agreement existed, Aggreko waived it by litigating the case in New York. The trial court granted BLH's a special appearance and dismissed for want of personal jurisdiction.

Aggreko now challenges the trial court's order granting BLH's special appearance in three issues: (1) BLH's special appearance must be denied because it

consented to the Texas court's jurisdiction through a forum-selection clause; (2) Aggreko has not waived the forum-selection clause; and (3) the trial court abused its discretion by not sustaining Aggreko's objection to BLH's special-appearance verification and by refusing to rule on the objection.

We conclude that Aggreko has failed to demonstrate that a valid forum-selection clause applies, and, thus, we affirm.

## Background

In May 2012, BLH, a New York limited liability not-for-profit corporation, rented a chiller from Aggreko, a Delaware corporation whose principal place of business is in Louisiana. When the rental term was complete, Aggreko removed the chiller from BLH's premises with the assistance of a transportation company, Napoli Transportation, Inc., d/b/a C&L Towing Services. The chiller was lifted out by a hoisting chain that subsequently broke killing Aggreko employee Tristan Mananghaya. Mananghaya's family sued BLH and Napoli in New York state court, and BLH filed third-party claims against Aggreko. Aggreko ultimately settled the New York claims. Aggreko then filed this suit, seeking contractual indemnification from BLH. BLH filed a special appearance, which the trial court granted, dismissing Aggreko's suit.

## A. The Chiller-Rental Transaction and Proposed Terms and Conditions

At the time BLH rented the chiller from Aggreko, Kuriakose Fred Fernandez was BLH's Senior Director of Engineering, and Hiram Torres was BLH's Assistant Vice President. Aggreko provided a Proposal containing pricing and other terms for leasing BLH the chiller ("Proposal"). In addition to setting out the specifications for the chiller, providing the monthly fee, and enumerating which services would be included and which would cost extra, the Proposal contained some terms and conditions such as providing that "[a]ll monthly pricing [was] based on a 28-day billing cycle." The "Terms and Conditions" section of the Proposal also provided:

> All services provided by Aggreko are subject to "Aggreko North America Rental Agreement Terms & Conditions." This document is provided online at: http://www.aggreko.com/NorthAmerica/ usefulJinks/terms_of_business.aspx and are incorporated herein by reference. Alternatively, a copy will be provided upon request. Customer accepts and acknowledges receipt thereof by these methods. Aggreko will accept no alternative terms and conditions.

The referenced Terms and Conditions contained, among other provisions, a forum-selection clause stipulating litigation in Harris County, Texas. The online Terms and Conditions also contained a clause requiring that BLH indemnify and hold Aggreko harmless for injury to third parties arising from the handling of the equipment. Specifically, they stated:

> 31. APPLICABILITY OF TERMS & CONDITIONS: **The terms and conditions hereof shall be deemed accepted and binding upon Lessee**

4

**upon transfer of custody of the Equipment to the carrier for delivery to Lessee's receiving point, regardless of whether the Rental Agreement is signed by Lessee. To the extent these terms and conditions or Lessor's proposal are in conflict with any terms and conditions provided by Lessee, the terms and conditions hereof shall dictate.** Notwithstanding any provision therein to the contrary, unless otherwise expressly agreed in writing and evidenced by signature of both parties, any terms attached to a purchase order or other customer-provided document are expressly rejected and shall have no force or effect. To the extent these terms and conditions are in conflict with any terms and conditions of a master service agreement with Lessee, the terms and conditions of the master service agreement shall dictate, unless the conflict is acknowledged in writing in which the parties expressly agree to conflicting terms.

32. COUNTERPARTS: **This Agreement**, including Lessor's proposal and these terms and conditions by reference therein, **may be executed in one or more counterparts**, each of which shall be deemed an original and all of which shall be deemed to be one and the same agreement. **Signatures of acceptance may be exchanged by facsimile, scan or e-mail**, and each party agrees to be bound by its own telecopied or electronically submitted signature, and to accept the telecopy or electronic signature of the other party. **Alternatively, acceptance of Lessor's proposal and these terms and conditions by reference therein may be made by email acknowledgement.**

(Emphasis added.)

Aggreko's Proposal further provided: "1. TO PLACE THE ORDER: You must sign and fax . . . the enclosed acceptance page," and it stated, "If your company uses purchase orders, please attach it to the order." The attached "Proposal Acceptance" addressed to Fernandez at BLH stated, "To accept Proposal 12006-7593, please complete, sign and return this page."

BLH received and reviewed the Proposal. Rather than signing and faxing the acceptance page back to Aggreko as the Proposal required, Fernandez emailed Aggreko Purchase Order 1. In the email, Fernandez stated that "[t]he agreement was faxed to Aggreko from the Materials Management office" because he did "not have a copy." Fernandez's email contained only Purchase Order 1, which was signed by BLH's vice president of materials management and incorporated material terms from the Proposal such as the type of chiller and the cost of renting it. However, Purchase Order 1 contained different terms and conditions, such as requiring that "any price change must have approval of the purchasing department prior to delivery" and provisions regarding payments.

After receiving Purchase Order 1 as signed by BLH, Aggreko embossed it with a stamp stating, "Subject to the terms of Aggreko proposal 12006-7593, dated 5/30/2012 of which customer acknowledges receipt, including all terms and conditions expressly referenced therein, which are incorporated herein by reference. Customer agrees to be bound by all such terms upon receipt of delivery of the equipment orders." It faxed the stamped Purchase Order back to BLH, but BLH did not sign the stamped response, nor did it acknowledge the stamped language in writing. Aggreko then delivered the chiller the following day.[1]

_____

[1]    In June 2012, John Minton, BLH's Lead Engineer, received and signed a bill of lading for the chiller. The bill of lading references the alleged agreed upon Proposal as "Agreement A285557," and it also contains a link to Aggreko's Terms

Following receipt of the chiller, Aggreko and BLH agreed to several change orders for installation and maintenance of the chiller. Each change order referenced the Proposal and Aggreko's Terms and Conditions but none were signed.

BLH ended the rental contract several months later. Aggreko employee Mananghaya was killed as the chiller was being removed from BLH's premises.

## B. Procedural History

Mananghaya's family sued BLH in New York state court. They did not sue Aggreko because worker compensation laws barred any suit by Mananghaya's heirs or estate against his employer. BLH, however, filed third-party claims against Aggreko seeking common-law indemnification.

and Conditions and incorporates them by reference. BLH objected to the exhibits filed by Aggreko in the trial court. Aggreko filed a different copy of the bill of lading the day the special appearance was submitted to the trial court. The trial court granted BLH's motion to strike the exhibit because it was late-filed and illegible, and it denied Aggreko's later motion for leave to file yet another copy of the bill of lading. Aggreko now argues that the bill of lading is properly before this Court because BLH did not obtain a ruling on its objections to the originally filed bill of lading. Thus, it appears from the record that Aggreko filed an additional document to address BLH's objection to the illegibility of the original bill of lading, but the trial court struck that document and denied Aggreko leave to file another copy. We therefore disagree with Aggreko's statement that the bill of lading is properly before this Court as part of the special-appearance record.

Furthermore, even if the bill of lading could be considered a proper part of the special-appearance record, a bill of lading typically does not have any contractual significance. *See Tabulating Sys. & Serv., Inc. v. I.O.A. Data Corp.*, 498 S.W.2d 690, 694–95 (Tex. Civ. App.—Corpus Christi 1973, no writ) (holding that bill of lading does not stand for or represent contract between buyer and seller, but is receipt given by carrier for goods, coupled with agreement for their carriage according to terms expressed in bill). Nothing in the bill of lading here demonstrated that BLH agreed to be bound by the referenced Terms and Conditions.

Aggreko filed a motion to dismiss, asserting that the Terms and Conditions governing the transaction between it and BLH contained a forum-selection clause requiring litigation in Harris County, Texas. The New York state court denied the motion to dismiss on January 4, 2014. It held that the documents proffered by Aggreko as the "contract" were not executed and Aggreko did not meet its burden to prove the Terms and Conditions controlled. Aggreko appealed and the New York appellate court held that neither the unsigned documents nor the conduct of BLH manifested that BLH accepted the Proposal and proposed Terms and Conditions. Thus, the New York appellate court held that the referenced Terms and Conditions containing the forum-selection clause was not enforceable. Litigation thus continued in New York state court.

In January 2017, Aggreko filed a motion for summary judgment against BLH in the New York state court suit. Aggreko asked the court to apply Texas law, as required by the Terms and Conditions. Aggreko further argued that Texas law and the Terms and Conditions barred BLH's indemnity claims against Aggreko. The New York state court again held that Aggreko did not prove as a matter of law that the parties agreed to the Terms and Conditions. The New York state court also rejected claims that the terms were binding and that BLH ratified the terms. Rather, the court granted summary judgment in favor of BLH, finding that BLH was entitled common-law indemnity from Aggreko on November 27, 2019.

Rather than appeal the final judgment, Aggreko filed suit against BLH in the United States District Court for the Southern District of New York, seeking indemnity based on the same alleged contract. Approximately three months after it filed this suit, Aggreko dismissed the federal suit and filed the underlying suit in Texas in September 2020.

In the instant suit, Aggreko asserted that BLH accepted the Terms and Conditions, or alternatively, ratified and was estopped from denying the Terms and Conditions. BLH filed a special appearance arguing that it had no contacts with Texas and that it did not agree to be bound by the Terms and Conditions containing the forum-selection clause. Without holding an evidentiary hearing, the trial court granted BLH's special appearance and dismissed Aggreko's suit. Aggreko also filed a motion for new trial, which the trial court denied. Aggreko filed a timely notice of appeal.

## Special Appearance

In three issues, Aggreko argues that the trial court erred in granting BLH's special appearance.

### A. Standard of Review

We review the trial court's grant or denial of a special appearance *de novo*. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

Aggreko does not argue that the trial court can assert either general or specific jurisdiction over BLH. Instead, its assertion of personal jurisdiction over BLH relies solely on the purported agreement containing a forum-selection clause. Thus, the traditional analysis of specific or general jurisdiction and due process considerations is unnecessary. *Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 833 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The review instead focuses on whether the trial court properly enforced, or declined to enforce, the forum-selection clause. *Id.* We review a trial court's decision on the validity or enforceability of a forum-selection clause under an abuse of discretion standard, except when review involves contractual interpretation of the clause, for which we employ a de novo standard of review.[2] *Id.*; *Barnett v. Network Sols., Inc.*, 38 S.W.3d 200, 203 (Tex. App.—Eastland 2001, pet. denied).

---

[2] In their briefing, the parties disagree regarding the standard of review that should apply when, as here, there was no evidentiary hearing. Aggreko cites to *Moncrief Oil* and *Villagomez* to argue the Court should review the facts de novo when no evidentiary hearing occurs. Both parties acknowledge that, generally, when the trial court does not issue findings of fact for its special-appearance decision, reviewing courts presume that all fact disputes were resolved in favor of the decision and imply all relevant facts necessary to support the judgment that are supported by the evidence, unless they are challenged on appeal. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021); *Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 832 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

Aggreko, however, quotes concerns raised in *Moncrief Oil* to argue that, when the trial court merely reviews evidence without the opportunity to make any credibility determinations at an evidentiary hearing, the appellate court is "in the same position as the trial court" and "implying all facts supported by the evidence in favor of the trial court's ruling seemed inappropriate." *Moncrief Oil Int'l, Inc. v.*

**B.     Relevant Law**

In its first issue, Aggreko argues that the trial court erred in granting BLH's special appearance because the forum-selection clause in its Terms and Conditions applies and obligates BLH to litigate in Texas. BLH, however, argues that the forum-selection clause does not apply because it never agreed to be bound by Aggreko's Terms and Conditions. BLH argues that the Proposal expressly required acceptance by signature, which BLH did not provide. Instead, BLH counteroffered through its Purchase Order with different terms. BLH further argues that it did not acknowledge or consent to be bound by the Terms and Conditions through its later conduct, including when it accepted the delivery of the chiller or when it accepted the installment and maintenance services for the chiller. Thus, it argues, Aggreko's claims that BLH ratified the Terms and Conditions or that BLH is estopped from denying that it is bound by the Terms and Conditions likewise fail.

---

*OAO Gazprom*, 332 S.W.3d 1, 7 (Tex. App.—Fort Worth 2010), *aff'd in part*, *rev'd in part*, 414 S.W.3d 142 (Tex. 2013); *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 727 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied). We note, however, that neither the *Moncrief Oil* nor the *Villagomez* courts actually applied the de novo review. *See Moncrief Oil*, 332 S.W.3d at 8; *Villagomez*, 210 S.W.3d at 727; *see also Moncrief Oil*, 414 S.W.3d at 150 n.4 (noting argument that appellate court should review implied findings de novo when there is no live testimony but concluding that "we need not address this issue because the relevant facts are undisputed").

We further note that neither party requested an evidentiary hearing or findings of fact from the trial court. Furthermore, nothing in this Court's analysis turns on any implied findings of fact purportedly made by the trial court. Accordingly, we continue to apply the standard of review as set out above.

11

To determine whether forum-selection clause applies, we must determine whether the parties agreed to be bound by the Terms and Conditions referenced in the Proposal and other documents from Aggreko. A binding contract exists when there is "(1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the term; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Lujan v. Alorica*, 445 S.W.3d 443, 448 (Tex. App.—El Paso 2014, no pet.) (citing *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007)). "Contracts require mutual assent to be enforceable," and "[e]vidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Sonnichsen*, 221 S.W.3d at 635. To determine whether there was a meeting of the minds, a court reviews in an objective fashion, without considering subjective intent, what the parties actually said and did. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 245–246 (Tex. App.—Waco 2003, no pet.).

"Under principles of Texas contract law, a party's failure to sign an agreement will render it unenforceable when the terms of the contract make it clear that the party's signature is required to make it binding." *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 715–16 (Tex. App.—Houston [1st Dist.] 2020, no pet.)

12

(citing *Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) ("Texas law recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent.")).

Lastly, any material change in a proposed contract constitutes a counteroffer, which, in turn, must be accepted by the other party. *Chapman v. Mitsui Eng'g & Shipbuilding Co., Ltd.*, 781 S.W.2d 312, 316 (Tex. App.—Houston [1st Dist.] 1989, writ denied); *see Parker Drilling*, 316 S.W.3d at 74 (holding that "a purported acceptance that changes or qualifies an offer's material terms constitutes a rejection and counteroffer rather than an acceptance").

## C.    Analysis

Here, Aggreko emailed the Proposal referencing its online Terms and Conditions containing the forum-selection clause to BLH. The Proposal expressly required BLH to sign and return the acceptance page in order to accept the proposal. BLH did not sign and return acceptance page, nor did it provide any written acknowledgment that it accepted the Terms and Conditions. Instead, BLH sent Aggreko the Purchase Order, which incorporated the Proposal's designation of the type of chiller and cost for rental but contained different terms and conditions. Aggreko proceeded to deliver the chiller without obtaining a signed acceptance sheet from BLH.

Aggreko has presented no evidence that it obtained the signed acceptance of its Proposal, including the Terms and Conditions, as expressly required in the Proposal. Thus, BLH's failure to sign the Proposal's acceptance sheet rendered it unenforceable because the Proposal's own terms made it clear that acceptance would be accomplished by signing and returning the acceptance sheet. *See SK Plymouth, LLC*, 605 S.W.3d at 715–16.

Instead, BLH responded by sending its own Purchase Order. The Purchase Order contained different terms and thus constituted a counteroffer, rather than an acceptance, of the Proposal. *See Parker Drilling,* 316 S.W.3d at 74; *Chapman,* 781 S.W.2d at 316. Aggreko received the Purchase Order and stamped it with a reference to its online Terms and Conditions. However, BLH did not sign the Purchase Order again after Aggreko affixed the stamp. Aggreko delivered the chiller without obtaining a signed acceptance of the Proposal or other assent to its Terms and Conditions.

Viewing the parties' actions objectively, the absence of BLH's signature on the acceptance sheet or express agreement to the Terms and Conditions referenced in the Proposal and Aggreko's performance without obtaining the signed acceptance page demonstrates that the parties never agreed to be bound by the provisions contained in Aggreko's Terms and Conditions. *See Sonnichsen*, 221 S.W.3d at 635; *Parker Drilling*, 316 S.W.3d at 75, 77. Aggreko has failed to

14

demonstrate that BLH agreed to be bound by the forum-selection clause contained in the Terms and Conditions.

Aggreko argues that when BLH's employee John Milton accepted delivery of the chiller and signed the bill of lading, he implicitly accepted the Terms and Conditions. However, "[o]ne who seeks to hold a corporation liable upon a contract made by an agent has the burden of proof, not only of the execution of the contract for the corporation, but the authority of the agent through whom it is claimed the corporation acted." *R.B. Spencer & Co. v. Thorp Springs Christian Coll.*, 41 S.W.2d 482, 486 (Tex. App.—Fort Worth 1931, writ dism'd w.o.j.); *see Huynh v. Nguyen*, 180 S.W.3d 608, 622 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that agent cannot bind principal unless agent has actual or apparent authority to do so). Here, Aggreko presented no evidence that Milton had authority to accept a contract on behalf of BLH, nor did it present any evidence that Milton knowingly agreed to bind BLH to the Proposal's Terms and Conditions.

Aggreko also argues that Fernandez consented to the Terms and Conditions by stating he faxed the "agreement" and requested delivery in the same email in which he sent Aggreko BLH's Purchase Order. This conduct, likewise, does not demonstrate BLH's agreement to be bound by the forum-selection clause. The "agreement" referenced by Fernandez was not identified in the email, and Aggreko

15

has presented no evidence that BLH provided it with a signed acceptance sheet as required by the terms of the Proposal. Fernandez's email does not make any reference to Aggreko's Terms and Conditions.

Aggreko also argues that BLH's subsequent actions of accepting the chiller demonstrate either that it ratified the Terms and Conditions through its conduct, or that BLH assented to all of the terms of the Proposal when it accepted the chiller and should therefore be estopped from disclaiming its agreement to the forum-selection clause. We disagree.

BLH's acceptance of the chiller under the circumstances set out above constitutes no evidence that it ratified Aggreko's Terms and Conditions. As with contract formation, whether a party has ratified changes to a contract is a matter of intent. *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021). "A party's subjective state of mind is immaterial to a claim of implied ratification." *Id.* at 197. A party claiming implied ratification must offer objective evidence of intent, such as a party's conduct. *Id.*; *see Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792 (Tex. App.—Austin 2002, pet. dism'd) ("Ratification may be inferred by a party's course of conduct and need not be shown by express word or deed."). "As with most objective inquiries, determining a party's objective intent requires an examination of 'the totality of the circumstances.'" *BPX Operating Co.*, 629 S.W.3d at 197.

The Supreme Court of Texas has held, "When analyzing a claim of implied ratification, we are mindful that '[t]he liberty to make contracts includes the corresponding right to refuse to accept a contract or to assume such liability as may be proposed.'" *Id.* (quoting *St. Louis Sw. Ry. Co. of Tex. v. Griffin*, 171 S.W. 703, 704 (Tex. 1914)). Thus, "implied ratification should be found only if the party's actions 'clearly evidenc[e] an intention to ratify.'" *Id.* (quoting *Chrisman v. Electrastart of Hous., Inc.*, No. 14-02-00516-CV, 2003 WL 22996909, at *5 (Tex. App.—Houston [14th Dist.] Dec. 23, 2003, no pet.) (mem. op.)).

Under this standard, Aggreko failed to meet its burden to prove that BLH intended to ratify the Proposal's Terms and Conditions. BLH did not sign or otherwise acknowledge in writing the Terms and Conditions referenced in the Proposal. Instead, BLH responded with the Purchase Order containing BLH's own terms and conditions. Aggreko's subsequent referrals to the Terms and Conditions in its stamp on the Purchase Order or in the bill of lading are Aggreko's own actions—they are not actions by BLH clearly evidencing an intent to agree to be bound by the Proposal's Terms and Conditions. Rather, BLH's acceptance of and payment for the chiller demonstrate its performance under the contract formed when it effectively counteroffered with its own Purchase Order terms, and Aggreko accepted the counteroffer by providing the agreed-upon chiller for the

17

agreed-upon price without requiring the express acceptance of the terms of the Proposal.

Nor did any of the change orders between the parties demonstrate ratification of the Proposal's Terms and Conditions. The purpose of Aggreko's subsequent change orders was to determine the pricing for necessary and required installation and maintenance of the chiller. Although the change orders referenced the Proposal and its Terms and Conditions, BLH did not sign the change orders or acknowledge the Terms and Conditions. Accordingly, we conclude that Aggreko failed to establish that BLH ratified the Terms and Conditions referenced in the Proposal and other communications from Aggreko. *See id.*

Likewise, BLH's acceptance of the chiller under the circumstances set out above constitutes no evidence that it agreed to be bound by all of the Terms and Conditions set out in the Proposal, estopping it from disclaiming the forum-selection clause. "Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens[.]" *Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 533 (Tex. 2023). This is not a situation where BLH is seeking benefits of a contract while simultaneously avoiding its burdens; rather, it is a question of what terms the parties agreed to when the contract was formed. As discussed above, BLH's acceptance of and payment for the chiller do not demonstrate an acceptance

18

of the benefits of a contract as embodied by the Proposal. Rather, BLH's subsequent performance was of the contract formed when it effectively counteroffered with its own Purchase Order terms and Aggreko accepted the counteroffer by providing the agreed-upon chiller for the agreed-upon price without requiring the express acceptance of the terms of the Proposal. Nothing in the record demonstrates that Aggreko's Terms and Conditions were ever made a part of the agreement between Aggreko and BLH, so the estoppel argument is unavailing.

Aggreko's arguments that its own Terms and Conditions were incorporated into the parties' agreement all turn in large part on Aggreko's unilateral statements that the Terms and Conditions apply. It points out that the Proposal itself states that "[a]ll services provided by Aggreko are subject to 'Aggreko North America Rental Agreement Terms & Conditions'" and that "[c]ustomer accepts and acknowledges receipt thereof by these methods. Aggreko will accept no alternative terms and conditions." The stamp Aggreko placed on the Purchase Order likewise referenced the Terms and Conditions, as did some other communications. Aggreko also points to the language in the Terms and Conditions themselves, including the provision that states, "The terms and conditions hereof shall be deemed accepted and binding upon Lessee upon transfer of custody of the Equipment to the carrier for delivery to Lessee's receiving point, regardless of whether the Rental Agreement is signed

by Lessee." Under these terms, Aggreko asserts that no signature was necessary. But as discussed above, these terms were never incorporated into the agreement between Aggreko and BLH.

Aggreko's reliance on this language that the Terms and Conditions apply upon acceptance of the chiller, regardless of whether the lessee signed a rental agreement, is consistent with imposition of a unilateral contract. A unilateral contract is created by the promisor promising a benefit if the promisee performs. *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) (citing RICHARD A. LORD, WILLISTON ON CONTRACTS § 1.17 (4th ed. 2007) ("A unilateral contract occurs when there is only one promisor and the other party accepts, not by mutual promise, but by actual performance or forbearance.")). A unilateral contract becomes enforceable when the promisee performs. *City of Houston v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011).

The evidence here, however, does not establish the existence of a unilateral contract. The parties exchanged documentation and paperwork setting out various terms and conditions. And the Proposal that first introduced Aggreko's Terms and Conditions required acceptance by signature—not by subsequent performance. The record is not only missing a signed rental agreement, but it is also missing a signed acceptance sheet that would have shown BLH's acceptance of all of the Terms and Conditions set out in or incorporated in the Proposal. Given these facts, no

20

subsequent conduct by BLH in accepting the chiller indicated an agreement to be bound by the forum-selection clause contained in Aggreko's online Terms and Conditions. Aggreko has failed to provide any evidence of a meeting of the minds between itself and BLH with regard to applicability of the Terms and Conditions containing the forum-selection clause. To have a meeting of the minds, the offered set of promises must be objectively definite and unambiguous so that the parties are demonstrably agreeing to the same promises. *See Cadence Bank, N.A. v. Elizondo*, 642 S.W.3d 530, 534–535 (Tex. 2022) (wire transfer request form not binding contract); *Guajardo v. Hitt*, 562 S.W.3d 768, 778 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (contract based on assumptions and subjective beliefs not binding); *Wells v. Hoisager*, 553 S.W.3d 515, 522–23 (Tex. App.—El Paso 2018, no pet.) (holding that letter from buyer signed by one of its agents did not constitute agreement to purchase land interest and stating that, "[w]hile a meeting of the minds dispute is usually treated as a question of fact, we will treat it as a question of law if the intent of the parties is clear from the face of the document").

Here, the Proposal required acceptance by signing and returning the acceptance sheet. BLH never signed the acceptance sheet, but instead provided alternate documentation in the form of its Purchase Order. Thus, it is clear from the

21

face of the documents that BLH did not accept the terms of the Proposal. *See Wells*, 553 S.W.3d at 522–23.

We overrule Aggreko's first issue on appeal. Because we conclude that Aggreko failed to prove that BLH agreed to be bound by the Terms and Conditions containing the forum-selection clause, and thus affirm the trial court's grant of the special appearance on that ground, we need not address Aggreko's additional argument that the trial court erred to the extent it concluded that Aggreko waived its right to enforce the forum-selection clause.[3]

---

[3] We likewise overrule Aggreko's third issue. In that issue, Aggreko complains that the trial court failed to rule on its objection to a verification by BLH as part of its special appearance. We first note that, in its order denying Aggreko's motion for new trial, the trial court overruled the objection concerning the verification. Even if the trial court's denial in its motion for new trial constitutes a failure to rule on Aggreko's objection, such failure was harmless. BLH's special appearance was accompanied by the affidavit of one of its witnesses, in addition to the verification of its counsel. Although Aggreko objected to counsel's verification, it failed to object to the witness affidavit or any of the documentary evidence attached to the special appearance. Thus, all of the facts asserted in the special appearance were supported by witness affidavit and other documentary evidence. *See Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 730–31 (Tex. App.— Houston [14th Dist.] 2013, pet. denied) (holding defect in verification harmless where attached evidence supported all asserted facts).

## Conclusion

We affirm the trial court's order granting BLH's special appearance and its dismissal of Aggreko's claims against BLH.


Richard Hightower
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.